## Staunton.

### SIMON BOGGS v. COMMONWEALTH.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*D. F. Kennedy*, for the plaintiff in error.

*John R. Saunders, Attorney-General*, and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General*, for the Commonwealth.

HOLT, J., delivered the opinion of the court.

On June 22, 1928, Samuel Ramsey was shot and killed on a public road in Wise county. For this crime Simon Boggs was indicted. A jury found him guilty of murder in the second degree and fixed his punishment at ten years confinement in the penitentiary. This verdict was confirmed by the trial court and is now before us on a writ of error. The jury was fully and properly instructed as to the law, and to the instructions given no objections are urged. It is said, however, that the verdict is without evidence to support

it, and this single assignment of error is all that is to be considered.

When a verdict has been returned and been confirmed by the trial court, it should be sustained if there is evidence to support it unless such evidence is so wanting in verisimilitude as to be inherently improbable and to challenge credulity.

When Ramsey was killed, Boggs was about eighteen years old. Boggs was a married man with two children. Samuel Ramsey had four daughters, Leotha Reece, Lillie Dotson, Martha Dell Ramsey and Sarah Ramsey. Mrs. Dotson's husband had left her, and to some extent Boggs had been a visitor in the Ramsey home. On June 13, 1928, this married daughter wrote to Henry Mullins inviting him to call. In that letter she asked him to bring Boggs, and said that she had something to tell him but was afraid to write direct for fear that Boggs' wife might see the letter. Three of these daughters, Lillie Dotson, Martha Dell Ramsey and Sarah Ramsey, were staying with their brother, Mitchell Ramsey, who was at that time living in the Sam Ramsey home. Mr. and Mrs. Sam Ramsey had left it and were living in an out-house a short distance to the rear, this because Mrs. Sam Ramsey was not well and was annoyed by vehicles passing along the highway.

In answer to this note of invitation and on the night before the homicide, Mullins and Boggs called. They were drinking, drunk, profane and disorderly, and so conducted themselves that Mitchell Ramsey went for his mother, who came and ordered them from the house. On the next afternoon, the accused and Mullins drove by the Ramsey home in an automobile with Boggs as chauffeur, and returned in a short time driving rapidly. Boggs called out: "Howdy, By God!"

and shot. A pistol ball was afterwards found imbedded in the house. Mrs. Sam Ramsey, at that time, was sitting in the yard on the edge of the road. Shortly after this, Boggs and Mullins, driving in the direction of Wise, met a truck driven by Samuel Ramsey, the deceased. This Boggs, who was driving their car, signaled to stop, and it, in reply to this signal, did stop. Ramsey put a rock under one of his truck wheels and went forward to meet Mullins and Boggs, who by that time were also in the road and coming toward him. Ramsey said: "What does this mean, boys?," to which Mullins replied with an oath that they were looking for Lee Skeem. Boggs then walked up to Ramsey and waved his hand in his face and a short time thereafter Ramsey was shot. One bullet struck him in the arm, another in the upper part of the body near the collar bone. Mrs. Ramsey heard these shots and came down to see what the trouble was. She saw her husband's parked truck and Simon Boggs "standing in this position, *kindly* stooped over." When he saw Mrs. Ramsey, he straightened up and said: "God damn you!" Mullins was standing below him in the road. Ramsey was at that time dead. Boggs and Mullins after this got back in their car and drove rapidly from the scene of the homicide.

On the day preceding the killing, Mullins and Boggs went to the store of one Henry I. Mullins, where Mullins tried to buy some pistol cartridges, thirty-two specials. Later they went to a Mr. Stallard's store where Mullins again attempted to buy cartridges. On neither of these occasions were they able to make a purchase. The accused was killed by a "32 special" bullet. Such a bullet was found imbedded in the Ramsey house. A pistol of that calibre was found in Mullins' possession, but if Boggs had any pistol it was

never found, although Mr. Cecil Bolling, who is president of the Citizens Bank at Wise and engaged in the mercantile business there, said that Mullins and Boggs came to his store the day before Ramsey was shot, to buy oil for their automobile, and that at that time both of them had pistols.

Boggs and Mullins said that they did not shoot at the Ramsey house. They denied that they signaled Ramsey to stop but said the signal came from him; that at their meeting he, with an oath, announced that he was going to kill them both, hit Boggs over the head with his pistol and staggered him a little; they then started to leave when Ramsey said: " 'God damn you, I am going to get you,' and he started up with his pistol like that and I grabbed mine and the shooting commenced." (Mullins' evidence.)

A physician, who examined Boggs at the suggestion of the Commonwealth's attorney, stated that he had a slight scratch on his head, but there was no bruise and that it could not, in his judgment, have been made by a blow from a pistol hard enough to stagger one.

Because of these contradictions on material matters, the jury rejected, as it had the right to do, the account that these men gave of what occurred when Ramsey was killed, and with it went the plea of self-defense.

In *Clopton's Case*, 109 Va. 813, 63 S. E. 1022, it was said that a jury is not obliged to accept the evidence of an interested or biased witness, though unimpeached, and this principle was reaffirmed in *Elkhart State Bank* v. *Bristol Broom Co.*, 143 Va. 1, 129 S. E. 371, which cited with approval *Joy* v. *Diefendorf*, 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484. To the same effect is *Sonnentheil* v. *Christian Moerlein Brewing Co.*, 172 U. S. 401, 19 S. Ct. 233, 43 L. Ed. 492. An extended

discussion of this matter appears in Moore on Facts, chapter 3, section 91, where this conclusion is reached: "That the credibility of a witness is for the jury where the testimony given by such witness is contradicted, or where he is impeached, or so interested in the result that his interest may affect his testimony, is one thing, but to say that the jury are entitled to disregard competent evidence in the case is quite another."

If the rule has been at times too broadly stated, it is everywhere conceded that the evidence of witnesses interested and biased may be rejected by the jury. That Boggs was interested is, of course, plain, but it might be said that Mullins was not, and that his confession was against interest. It was coupled with the claim that he shot to protect himself. If accepted, he would go free. This doubtless led the jury to reject their account of all that took place—manifestly they did reject it.

If Mullins' confession be accepted, it does not affect the results. He and Boggs were both sore over the treatment which they had received at the hands of Mrs. Ramsey on the preceding night, as their conduct in driving back and forth in front of her house plainly showed. It was Boggs who then shot; it was Boggs who signaled Ramsey to stop, and it was he who was stooping over by the body when first seen, and who cursed Mrs. Ramsey when he became aware of her presence. That they were looking for trouble seems reasonably plain, for on no other theory can their conduct be explained. Ramsey's approach after he had been signaled to stop was, according to the evidence for the Commonwealth, friendly. The assault could not have been precipitated by him. It is true that he drew his pistol, but he did not shoot, and it is

fair to assume that his failure to do so was due to helplessness from wounds already inflicted.

There may have been no well defined purpose, in the beginning, to commit murder, but it was incident to a felonious assault made by two men on one small and frail. For the homicide which followed both are responsible, and it is of no moment whether we look upon Boggs as the participator in a joint attack, or as a principal in the second degree.

There is evidence tending to show that the accused and his companion were acting in concert, and that the difficulty was brought on by him. The meeting was not accidental, for Ramsey stopped at Boggs' request. If there was any purpose in view besides an assault, it has not been suggested. That there was an assault is not questioned, while attendant circumstances make plain the fact that Ramsey was not the aggressor.

Those who provoke a difficulty cannot be heard to say that the stress of action carried them beyond their original purpose. One who attacks another may expect resistance, and if in the accomplishment of his purpose, homicide, whether necessary or not, is inflicted, it is murder, though it may not have been contemplated in the original scheme of things. Of course, something more than mere presence is required. The test is concert of action, and the result must have been one of its incidental probable consequences. Wharton's Criminal Law, section 258.

In *Brown* v. *Commonwealth*, 130 Va. 736, 107 S. E. 809, 810, 16 A. L. R. 1039, the court said: "Mere presence when a crime is committed is, of course, not sufficient to render one guilty as aider or abettor. There must be something to show that the person present and so charged in some way procured, or incited, or encouraged, the act done by the actual

perpetrator. *Kemp's Case*, 80 Va. 443, 450. But whether a person does in fact aid or abet another in the commission of a crime is a question which may be determined by circumstances as well as by direct evidence." *Shiflett* v. *Commonwealth*, 151 Va. 556, 145 S. E. 336.

*Brown's Case* cited with approval the leading case of *State* v. *Darling*, 216 Mo. 450, 115 S. W. 1002, 1005, 23 L. R. A. (N. S.) 273, 129 Am. St. Rep. 526; 13 R. C. L. page 730, section 31, where, quoting from 1 McClain on Criminal Law, section 196, the court says: "It results from the principle stated in the preceding section, that everyone connected with carrying out a common design to commit a criminal act is concluded and bound by the act of any member of the combination, perpetrated in the prosecution of the common design. But it is not necessary that the crime committed shall have been originally intended. Each is accountable for all the acts of the others done in carrying out the common purpose, whether such acts were originally contemplated or not, if they were the natural and proximate result of carrying out such purpose, and the question whether the result is the natural and probable effect of the wrongful act intended is for the jury. Thus, if several persons agree to commit and enter upon the commission of a crime involving danger to human life, such as robbery, or assault and battery, or resisting an officer, or resisting arrest, all are criminally accountable for death caused in the common enterprise. Thus, also, if the unlawful enterprise is likely to meet violent resistance, all will be liable for a felonious assault committed by one of their number in consequence of such resistance, and, if the common design, in general, involves acts of violence, all who participate in the common plan are

equally answerable for acts of others done in pursuance thereof, although the result was not specially intended by them all."

██ ██ Here, as in most cases, evidence relied upon for conviction is to a large degree circumstantial, and as has been pointed out, the weight to be given to circumstances is pre-eminently a jury question. A restatement of it is not necessary, although it is not out of place to consider, as in *Brown's Case*, the after-conduct of the accused and his promptness and pre-cipitation in leaving the scene of the tragedy. For the accused, we are cited to *Reynolds' Case*, 33 Gratt. (74 Va.) 834, and to *Kemp's Case*, 80 Va. 443. Judge Kelly, in *Brown's Case*, calls attention to the fact that there was no evidence there of a prearranged plan to attack the deceased. There is such evidence in this at bar. In *Kemp's Case*, Judge Richardson said that the meeting of the parties present at the tragedy was purely accidental. Here it must have been the result of some prearranged agreement. In no other way can Boggs' signal to Ramsey to stop be explained.

We are of opinion that the verdict and judgment are sufficiently supported by the evidence. The judgment is therefore affirmed.

*Affirmed.*