# Richmond.

## DANIEL KING V. COMMONWEALTH OF VIRGINIA.

January 16, 1930.

Absent, Chichester and Epes, JJ.

The opinion states the case.

*Burnett Miller* and *Walter H. Robertson*, for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Daniel King, by indictment, was charged with the unlawful transportation of ardent spirits. In due course a jury returned into court this verdict:

"We the jury agree that Daniel King is guilty of transporting ardent spirits in excess of one gallon and fix his punishment with a term of six months in jail and a fine of $250.00."

Judgment went and is now before us on a writ of error, the major complaint being that it is contrary to the law and the evidence and is without evidence to support it.

R. T. Hedgepeth, town sergeant of Warrenton and special prohibition inspector, testified that he was standing in front of the court house of Fauquier county on the morning of July 5, 1928, and that somewhere between half past and a quarter past four the defendant with another man passed him in an automobile, a Chrysler 80 touring car; that he recognized the defendant and was then on the outlook for a car of this description believed to be engaged in the transportation of ardent spirits. This car he followed by its tracks on the wet macadam pavement two miles down the road, his statement being:

"I had my car around behind the court house; I got

in it and followed the tracks; the streets were wet; tracks were plain; two big tracks; one went on the right hand side going and the other on the right hand side coming; both of these tracks went directly to Mr. William Fletcher's house, and where those tracks came out they made imprints of red mud on the road for a quarter of a mile."

Hedgepeth did not at that time go to the Fletcher home but returned to Warrenton where he procured a search warrant, after which, accompanied by the sheriff, Mr. Woolf, he immediately returned to Fletcher's and found in his garage six gallons of whiskey in fruit jars. Mr. Woolf said that he went with Hedgepeth to the Fletcher home and found the whiskey there. This witness could not see automobile tracks on the macadam except at the Fletcher lane where they were made plain by mud brought from it.

Fletcher was arrested and convicted.

██ ██ All that can be said of this evidence, after giving to it full credit, is this: A suspected automobile with King in it drove up to Fletcher's house in the early morning and shortly thereafter left; a search of the premises was made about an hour later and whiskey was found in the Fletcher garage. King's reputation as a violator of the prohibition laws is bad, but reputation alone cannot convict. The burden was upon the Commonwealth to show the defendant guilty of actual transportation. For this necessary support Fletcher is relied upon. The attorney for the Commonwealth was unwilling to call him and asked the court to do so, assigning as a reason therefor that the witness was adverse and had made contradictory statements. It may be said in passing that he had made contradictory statements but his testimony does not show him to have been adverse. He was called by the court. In chief he said:

"Q. Did any car come in that morning?

"A. Yes, sir.

"Q. Did anyone call you from the car?

"A. Not from the car; did not, no sir.

"Q. Did anyone get out of the car and call you?

"A. Someone knocked at the door.

"Q. Did you recognize that voice?

"A. I thought I did.

"Q. Whose voice did you think it was?

"A. Dan King's."

He said that there were two men there and that they left a case of whiskey. On cross-examination he said:

"Q. Why did you say a moment ago you reckoned it was Mr. King?

"A. I said I recognized his voice.

"Q. Did you recognize him, see him and recognize him?

"A. It looked like him.

"Q. Would you say positively it was him? Lots of people look very much alike?

"A. Unless I had a real good look at his face; I supposed it was him.

"Q. You would not swear positively to this jury that it was King, would you?

"A. Yes; I would swear it was King.

"Q. Did you say you would swear it was King or supposed it was King?

"A. I would say it was King.

"Q. You knew him and recognized him?

"A. Yes, sir.

"Q. What was the voice that you heard that night?

"A. I do not know. I do not recollect.

\*　　　　\*　　　　\*

"Q. Then you were in full view of King, were you not?

"A. Yes; I told you it was kind of dark.

"Q. But you could see King, couldn't you?

"A. I could see a man, yes; sir.

"Q. And you could see him and looked at him?

"A. Yes, sir.

"Q. Is that right?

"A. Yes.

"Q. Saw him in the face, didn't you?

"A. No, I did not, I told you—said something going to the car. He was getting in the car.

\*　　　　　\*　　　　　\*

"Q. Why did you tell the jury that you recognized him more by his voice than by looking at him?

"A. I recognized him both ways.

"Q. He never said anything to you, did he? He never addressed any remarks to you?

"A. Not that I know of, I don't think he did.

\*　　　　　\*　　　　　\*

"Q. Did you ever say to Mr. King that you did not recognize him there and was surprised that such a charge should be brought against him?

"A.. No; I do not think I did.

"Q. Don't you think you did?

"A. No, sir.

"Q. Haven't you told Mr. King in the last ten days that you would not say that he. had ever been there with liquor, and you did not believe he had been, and you did not recognize him?

"A. No, sir; I have not. I told Mr. King I was going to tell the truth about this thing any time it came up."

On redirect examination he said that he had never talked with King about the case.

This affidavit was introduced in evidence by the Commonwealth:

"I, William H. Fletcher, make the following statement of my own free will without any promise having

been made me. That Dan King left a case of whiskey at my house this morning to be given to Mrs. Betty Fletcher and he had done so numerous times before and Edward Fletcher always came to get it. That Dan King came in the same big car that usually brings the whiskey in.

"Given under my hand this 5th day of June 1, 1928.
                    "(Signed) W. H. FLETCHER."

He was examined as to it and this was his evidence:

"Q. Was the time you mentioned Mr. King coming to your house on June 5th, the only time he ever was at your house? Had Mr. King ever been to your house before this June 5th?

"A. I do not know, sir; some one had come there.

"Q. Had he ever been there?

"A. Not that I know of.

"Q. Do not know that he had ever been there before that date?

"A. No, sir.

"Q. Had he ever brought whiskey there before?

"A. I do not know whether he had or not. I do not know whether Mr. King brought any whiskey there or not before.

"Q. They have you down here—Mr. Carter read you an affidavit a while ago, and you said that you recognized it, and that all in that affidavit was true. Now, remember you stated to the jury that you do not know whether he ever came there or brought any whiskey before?

"A. I said someone brought whiskey there before. I do not know whether it was Mr. King or not.

"Q. Did he ever bring it there?

"A. I do not know.

"Q. You say in this affidavit here that Dan King

left a case of whiskey at my house this morning to be given to Mrs. Betty Fletcher and he had done so numerous times before. Now you say you do not know whether he had ever done it before. Which statement is correct?

"A. I do not know whether he had. Someone brought whiskey there.

"Q. Don't you think you are a little reckless in your statement that he did it?

"A. I say I do not know if he did or somebody else.

"Q. In this affidavit you swore he did it. Now, which statement is correct?

"A. I do not know whether he brought it or someone else.

"Q. This affidavit is signed, and sworn to before a justice of the peace. You say in here, and he had done so numerous times before. Now, you say you do not know whether he did or someone else did it. Which statement is correct?

"A. I reckon he brought it there because he brought the other.

"Q. You said a minute ago you did not know, but in this affidavit you say he did. Which statement is true, the one you make now, or the one in the affidavit? They absolutely contradict each other. Which one is true?

"A. True in either, I guess.

"Q. Is the one you made here just now, untrue?

"A. I told you somebody brought it there.

"Q. You told me a moment ago you do not know whether King did it or not. In this affidavit you say positively King did it. Which statement is true?

"A. King brought it.

"Q. Had King brought it there many times before that numerous times?

"A. I say someone brought it. I do not know whether King did or not.

"Q. You said in this affidavit King had done it and done it on numerous occasions before. A minute ago you told me two or three times that you did not know whether he had ever brought it there before or not. Now, which statement is true? You say now he did bring it?

"A. What's on that paper is true.

"Q. If what's on this paper is true, the statement you made to me a moment ago is not true, is it? Both cannot be true. Which one is true?

"A. I have told you all I have to say. The one that is in the paper is true."

King testified as follows: "I was talking to Mr. Fletcher, and asking what he said: I told him to tell everything that was all right, and he said he could not say it was me. He would not say it was me, because it was not, and he said he had made a statement and the reason he made the statement that the sheriff and Mr. Hedgepeth told him if he did not do so that they were going to give him five years. That is the words he told me."

It is true that he is an interested witness, but it is likewise true that this statement has not been denied.

Fletcher had been once in the penitentiary and entertained a wholesome distaste for that institution.

The power given to this court and to trial courts by statute (Code, sections 6251 and 6363) has frequently been discussed.

In *Boggs* v. *Commonwealth, ante,* page 828, 149 S. E. 445, the court said: "When a verdict has been returned and been confirmed by the trial court, it should be sustained if there is evidence to support it, unless such evidence is so wanting in verisimilitude as to be

inherently improbable and to challenge credulity."
See also *Flannagan* v. *Northwestern Mut. Life Ins. Co.*,
152 Va. 38, 146 S. E. 353.

If we put entirely aside the confused testimony
of Fletcher there remains evidence for the Common-
wealth to show that the accused was reputed to be an
habitual violator of the prohibition laws. It further
appears that there was reason to suspect that the car
in evidence was engaged in the unlawful transportation
of ardent spirits. It was seen at an early hour on June
5th to pass through Warrenton with him in it, and
went at this unusual hour to Fletcher's home, where it
remained for a few moments. In an hour or two there-
after these premises were searched and contraband
liquor was found in Fletcher's garage. If this car went
to that place for any lawful purpose such purpose is
not suggested by the evidence. In the light of these
facts we are not prepared to say that the verdict and
judgment of the trial court is without evidence to
support it.

Mrs. King testified on behalf of her husband in
an attempt to establish for him an *alibi*. She said that
he was at home on the night of June 5th and when
questioned as to how she could be certain of that date
said: "Because the following day the sheriff with
some gentlemen came down from up there looking for
Mr. King, and he was gone off. May I make one state-
ment, please? I have heard so many different ones
here saying about Mr. King being an awful man. In
Arlington county he is considered one of the best
citizens of Arlington county." That evidence, on
motion of the Commonwealth, was stricken out. To
this action of the court exception was duly taken.

We have had frequent occasion to comment upon
the importance of evidence of this character in these

cases. It is important for the Commonwealth and it is important for the accused. It is true that this statement of the witness was volunteered and not made in response to any question which tended to bring it out. But it was both competent and important and should have been given to the jury for what it was worth. In the confused state of much of the testimony as hereinbefore set out, we think that the court erred in withdrawing its consideration from the jury. For this reason the case is reversed and remanded to be tried in accordance with the views here expressed.

*Reversed and remanded.*