## Richmond

William Kenneth Parish v. Commonwealth of Virginia.

November 29, 1965.

Record No. 6087.

Present, All the Justices.

*Frank A. S. Wright (Franklin J. Carter; Walter L. Smith,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

This case is companion to that of *Pasanello* v. *Commonwealth,* Record No. 6086, this day decided.

William Kenneth Parish, the defendant, was indicted by the grand jury upon four counts involving the theft and disposition of certain articles of clothing. He was tried by the court, without a jury, and was found guilty of the offense charged in the third count of the indictment. A sentence of six years in the penitentiary was imposed upon the defendant and he is here upon a writ of error awarded by this court.

The third count of the indictment alleged that the defendant, on November 30, 1962, unlawfully and feloniously aided "some evil

disposed person to the Grand Jurors unknown" in concealing clothing belonging to Ed Michtom's (a men's clothing store in Charlottesville), of the value of more than $50.00, knowing the said clothing to have been stolen. (Code, § 18.1-107.)[1]

The evidence in this case differs somewhat from that presented in the *Pasanello* case (Record No. 6086) and will, therefore, be fully set out here.

The evidence shows that in the latter part of 1962, Ralph Gaudio, "noted as a *'fense'* ", inquired of Richard J. Baughman, an employee of a bus terminal in Youngstown, Ohio, concerning "express shipments coming out of Virginia." The shipments were identified by Gaudio as a duffel bag and a large cardboard box, consigned either to Allen Lee or Bill Moore.

After Gaudio departed, a police officer inquired of Baughman about the purpose of Gaudio's visit. Upon being informed of such purpose, the officer advised Baughman to notify the police immediately "if these particular shipments . . . came in."

Some time later, Baughman received a duffel bag consigned to William Moore, shipped under the name of William Lewis from Charlottesville, Virginia. He also received a large cardboard carton consigned to Allen Lee, shipped under the name of Allen Lee from Lynchburg, Virginia.

The duffel bag and the cardboard carton were turned over by Baughman to the Youngstown police department. The police, acting under a search warrant, examined the contents of the packages. Each was found to contain large quantities of clothing, some bearing labels of Ed Michtom's. The duffel bag contained five men's suits from Michtom's as well as two ladies' coats, one of them bearing the label of Miller and Rhoads. The cardboard carton contained five suits from Michtom's, together with men's and ladies' clothing from several other stores in Charlottesville.

The Youngstown police, "following communications with the local FBI office and the Charlottesville Police Department . . . received a confirmation from the Charlottesville Department that the items were stolen in" Charlottesville. The contents of the duffel bag and cardboard carton were forwarded to the Charlottesville police.

John G. McCarthy, a special agent of the Federal Bureau of Inves-

---

[1] "§ 18.1-107. *Receiving, etc., stolen goods.*—If any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted."

tigation, conducted an investigation in Charlottesville. He found that at 7 p.m. on November 29, 1962, the defendant, employing the alias of Jack R. Baker, and Lewis R. Ziogio, registered at a local hotel. The defendant gave a Richmond, Virginia, address and Ziogio a Brunswick, Georgia, address. The two men "indicated that they were to be joined by a third individual and decided to reserve three separate rooms." Pasanello also registered at the same hotel on the same night, listing on his registration a Las Vegas, Nevada, address and a Cadillac automobile with California license plates.

McCarthy obtained descriptions "from clerks and owners of the various local stores whose clothing appeared in the bundles" recovered in Youngstown. He also secured "approximately thirty photographs of individuals in the Los Angeles area" and recent photographs from the identification division of the FBI. The photographs of the defendant and Pasanello were identified by the personnel in the various stores as fitting the description of two of the three men who were previously unknown in each of the stores.

Several employees of the Michtom store were called as witnesses by the Commonwealth. One of them testified that he had observed the defendant, Pasanello and an unidentified third person in the store together on two occasions during the latter part of November or the first part of December, 1962. Another employee stated that the defendant and "other persons with him" were in the store during "the latter part of 1962." A third employee testified that the defendant was in the store "on more than one occasion" in the latter part of 1962, accompanied on one visit by one person. These witnesses also testified to the suspicious circumstances under which the defendant and the other two men visited the store.

The ticket agent of the Trailways bus terminal in Charlottesville testified that Pasanello, at 11:40 a.m. on November 30, 1962, shipped a duffel bag to Youngstown, Ohio. The shipping ticket, identified by the agent and admitted as an exhibit, showed that the duffel bag contained clothing and that it was consigned to William Moore from William Lewis.

An employee of the Trailways bus terminal in Lynchburg was called as a witness by the Commonwealth. He testified that the defendant and Pasanello, some time between 4 p.m. and 6 p.m. on November 30, 1962, shipped a box containing clothing to Youngstown, Ohio, consigned to Allen Lee from Allen Lee. This witness observed the defendant and Pasanello leaving the bus station, one in a Cadillac

automobile and the other in a Chevrolet, both driving in the same direction.

The general baggage and express agent of the Trailways Company testified that only one package was shipped from Charlottesville to Youngstown and only one package from Lynchburg to Youngstown on November 30, 1962.

■ The first contention of the defendant with which we must deal relates to his twelfth assignment of error. There he claims the court erred in denying him a continuance.

Warrants were issued for the arrest of the defendant and Pasanello in November of 1963. The warrant against the defendant was not executed. However, Pasanello was arrested immediately and he gave bond for his appearance in court. A preliminary hearing was held in Pasanello's case on November 26, 1963, and he was bound over to the grand jury, by which he was indicted at the December, 1963, term.

Pasanello's case was set for trial in the corporation court on March 11, 1964. On February 17, 1964, the defendant's privately retained counsel, who also represented Pasanello, entered into an agreement with the Commonwealth's Attorney and the court to set the defendant's trial for March 12, 1964, the day following Pasanello's trial date.

The defendant submitted himself for a preliminary hearing in the municipal court on March 11 at which time he was held for action of the grand jury. A special grand jury met later on the same day and indicted the defendant. When he appeared in the corporation court the next morning, March 12, his counsel moved for a continuance of the case, which the court denied.

The defendant now says that all he requested of the trial court was a postponement of the case, rather than a continuance, which, he asserts, "should be more liberally granted than continuances and that the rules with respect to continuances do not apply to postponements."

However, the record shows that the very language of the defendant's counsel was, "I would like to formally move for a continuance in this matter." The order of the court recited that the defendant, by counsel, moved the Court for a continuance.

This question, then, is to be determined by the rules applying to continuances. Under those rules, the granting or denying of a continuance lies within the sound discretion of the trial court and we will not interfere with its action unless it is clear that such dis-

cretion has been abused. *Wansley v. Commonwealth*, 205 Va. 419, 421, 137 S. E. 2d 870.

Does such abuse of discretion appear in the record before us?

The defendant agreed with the Commonwealth's Attorney and the court for his case to be tried on March 12. As a result of that agreement, the defendant was not arrested and placed in jail, or required to give bond, while awaiting trial. He received the fruits of the agreement and should not be heard to complain unless he had some substantial reason upon which to ground his request for a continuance.

No such reason was advanced by the defendant to the trial court. His request appeared to have been based upon nothing more than his counsel's concern over the fact that stronger evidence had been presented against Pasanello the day before than had been presented in the Pasanello preliminary hearing. His counsel admitted, however, that he had been "told that there was additional evidence."

The defendant did not suggest to the trial court that there was testimony of witnesses, or evidence in any other form, which he could secure if a continuance was granted. To the contrary, his request for a continuance, in the words of his counsel, was based upon his desire "to sort of retreat, regroup and be in a little better position to try the matter." In other words, it appears that the defendant sought a continuance for the mere sake of delay.

Under these circumstances, we find that there was no abuse of discretion on the part of the trial court in denying the motion for a continuance.

█ The defendant's principal contention is that the evidence was insufficient to prove the corpus delicti and to sustain the conviction.

To prove the corpus delicti and to establish the guilt of the defendant, the Commonwealth had the burden of showing four elements, namely: (1) that goods of the value of more than $50.00 were previously stolen from the Michtom store by some other person; (2) that the defendant aided in concealing them; (3) that at the time he so aided in concealing them, he knew they had been stolen, and (4) that he so aided in concealing them with a dishonest intent. *Longman v. Commonwealth*, 167 Va. 461, 464-465, 188 S. E. 144; *Patterson v. Commonwealth*, 165 Va. 734, 736, 181 S. E. 281.

The defendant first contends that the Commonwealth did not sufficiently identify the suits in question so as to prove ownership thereof by Ed Michtom's at the time of the alleged theft and did not establish the value of the suits. We find this contention to have no substance.

One of the store employees who testified for the Commonwealth said of one of the suits found in the duffel bag, ". . . it belongs to Ed Michtoms." The witness pointed out certain labels and tickets on the suit to corroborate his identification. The Commonwealth's Attorney then presented a second suit from the duffel bag and asked the witness if he could identify it in the same manner. Counsel for the defendant then stated, "Mr. Camblos (the Commonwealth's Attorney), this is exactly what I would have stipulated to you." The Commonwealth's Attorney, acting upon counsel's statement, then offered all five of the suits from the duffel bag into evidence and they were admitted without objection from the defendant.

When the suits found in the cardboard box were presented to the witness, counsel for the defendant stated that he would stipulate that the suits were "at one time in the stock of Ed Michtoms." The Commonwealth's Attorney then proved by the witness that the suits were not sold by the store and that their value exceeded $50.00. The suits were then admitted into evidence without objection by the defendant.

The defendant next contends that it was not shown that the goods were stolen; that he aided in concealing them; that he knew they were stolen, and that he acted with dishonest intent. We are of opinion that the evidence sufficiently established these necessary elements of the offense.

The evidence of the Commonwealth and the stipulations of the defendant showed, as has been noted, that the suits were owned by the Michtom store at the time of the alleged theft. The evidence of the Commonwealth fully established that the suits did not leave Michtom's possession as the result of a sale by the store.

The defendant registered at the local hotel early in the evening of November 29, 1962, the night before the shipments of clothing were made. He used the name of Jack R. Baker, an alias known to be employed by him because he had been "arrested in New Jersey and fingerprinted under that name." Ziogio registered at the hotel with the defendant and the two indicated that they were to be joined by a third individual. Later in the same evening Pasanello registered at the same hotel.

The defendant, although he gave a Richmond, Virginia, address when he registered at the hotel, was identified from a group of thirty photographs "of individuals in the Los Angeles area." Pasanello, although he gave a Las Vegas, Nevada, address, was driving a Cadillac automobile registered to him at a Hollywood, California, address.

Pasanello was identified from recent photographs obtained from the FBI files. The defendant and Pasanello were identified by the "clerks and owners of the various local stores whose clothing appeared" in the duffel bag and the cardboard carton recovered in Youngstown as being two of the three men "who were previously unknown in each of the stores."

The defendant, in the company of Pasanello and an unidentified third person, was observed in the Michtom store on several occasions around the time the shipments of clothing were made. The defendant, using another alias, Bill Williams, and asserting that he was in the construction business in Richmond, pretended to be interested in purchasing clothing, although in the end he bought nothing. The three men did not remain together in the store and Pasanello and the unidentified third person left the store "for a short while" and returned.

Five of the suits were shipped by Pasanello from Charlottesville to a known *"fense"*, a dealer in stolen goods, primarily clothing, in Youngstown. Five more suits belonging to Michtom's were shipped by the defendant and Pasanello to the same "fence" from Lynchburg. In each instance, the shipment was made under a false name to a false consignee. The "fence", at the time of the defendant's trial, was a fugitive from justice, under a sentence of one to seven years imposed upon him in Youngstown, Ohio, upon a charge of receiving stolen property.

With respect to the shipment of clothing from Lynchburg, there was positive evidence that the defendant and Pasanello both participated "in this transaction with the people around the bus terminal"; that they together "shipped a box to Youngstown, Ohio"; that they "had it shipped" at the Trailways terminal, and that they said there was clothing in the box.

Under these circumstances, the conclusion is fully warranted that the clothing in question was removed from the Michtom store by some unidentified person as the result of a larcenous plan and design, participated in by the defendant, Pasanello and other "evil disposed persons", acting in concert. As a part of that plan and design, the stolen goods were secreted out of Charlottesville and shipped to another state for disposition by a dealer in stolen merchandise. By assisting in carrying out that part of the plan, the defendant, with guilty knowledge and a dishonest intent, aided in concealing the stolen goods. *Snyder* v. *Commonwealth*, 202 Va. 1009, 1016, 121

S. E. 2d 452; *Tasker v. Commonwealth*, 202 Va. 1019, 1026, 121 S. E. 2d 459.

■ The defendant contends, however, that his conviction was secured upon improperly admitted evidence which, he says, requires us to reverse the judgment of the trial court. He also complains of the failure of the court to admit certain evidence offered by him.

The defendant first argues that the court erred in admitting the evidence relating to the shipment by Pasanello of the duffel bag from Charlottesville to Youngstown.

In *Boggs v. Commonwealth*, 153 Va. 828, 836, 149 S. E. 445, it is stated, " '. . . everyone connected with carrying out a common design to commit a criminal act is concluded and bound by the act of any member of the combination, perpetrated in the prosecution of the common design . . . .' "

"This is true though the defendant was not present when the act was committed." 21 Am. Jur. 2d, Criminal Law, § 132, p. 203.

Pasanello's shipment of the duffel bag was part and parcel of the common plan and design, employed to secrete the stolen goods out of Charlottesville and into the hands of the "fence" in Ohio. That being so, and the defendant and Pasanello being members of the combination involved in the common design, the defendant was "concluded and bound" by Pasanello's action, even though he was not then present. It was not error, therefore, to admit the evidence relating to the Pasanello shipment.

■ The defendant's next contention is that it was improper to admit the evidence relating to the shipment of clothing from Lynchburg. The Charlottesville court, the defendant says, had no jurisdiction over an offense committed in Lynchburg. The defendant also argues that the disputed evidence constituted a fatal variance with the indictment and was irrelevant and immaterial.

This contention is without merit. When goods are stolen and concealed, it is proper to show the connection of the accused therewith wherever they may be traced. Since the defendant and Pasanello appeared together in Lynchburg in possession of the stolen goods, it would have been proper for the trial court to infer that they participated in secreting the clothing out of Charlottesville. That act of secretion related directly to the offense of aiding in concealing stolen goods in Charlottesville, an act clearly under the terms of the indictment and within the jurisdiction and venue of the trial court.

But, regardless of the identity of the person who secreted the

goods out of Charlottesville, that act was performed pursuant to the common plan and design of which the defendant was a part. The defendant was "concluded and bound" by the act of whatever person removed the goods from Charlottesville.

The disputed evidence directly linked the defendant with Pasanello and in turn linked them with the stolen goods. The relationship of these men to each other was a crucial issue in the case and their association together, wherever such association may have occurred around the time of the offense, was relevant and material to the issue on trial.

The evidence in question tended to establish the necessary ingredients of the offense with which the defendant was charged. Not the least of these elements was the defendant's dishonest intent in aiding in the concealment of the goods, which the Commonwealth was required to prove. Such an intent not only may, but usually must, be shown by circumstantial evidence. The circumstances of the Lynchburg transaction constituted significant evidence of the defendant's dishonest intent. *Longman* v. *Commonwealth, supra*, 167 Va., at pp. 466-467.

■ The defendant next argues that because the indictment alleged that the offense occurred on November 30, 1962, and that because it was shown that the shipments of clothing were made during the daytime on that date, it was improper to admit evidence concerning his activities after the shipments occurred. The defendant cites the testimony of one of the store employees who testified that "to the best of [his] knowledge" the defendant, Pasanello and the unidentified third person were in the store during the evening of November 30 and the morning of December 1.

The defendant contends that because of the confusion in dates resulting from the evidence in question, the time of commission of the offense was not shown.

This contention is without merit. If any confusion exists, it is in the defendant's argument that the lack of evidence concerning the time of the theft of the goods constituted a fatal weakness in the proof of the charge against him.

It should be borne in mind that the offense here under review is that of aiding in concealing stolen goods, and not the actual theft thereof. While it is true that the exact time of the theft was not fixed, it is obvious that the goods were stolen before they were shipped to Ohio. The evidence conclusively showed that the ship-

ments were made on November 30, 1962, and thus it was fully established that the defendant aided in concealing the goods on that date, as alleged in the indictment.

The defendant says that the admission of the disputed evidence resulted in a fatal variance with the indictment.

If it be assumed that such evidence tended to prove the commission of a crime on a date other than that set forth in the indictment, that variance did not render the indictment invalid nor make the defendant's conviction illegal.

Code, § 19.1-172 states that "No indictment . . . shall be . . . deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense."

And in *Stapleton* v. *Commonwealth*, 140 Va. 475, 488, 124 S. E. 237, it is stated that "it is well understood, that the Commonwealth may prove the commission of the crime charged on a date different from that alleged, and sustain a conviction thereof." See also *Harris* v. *Commonwealth*, 185 Va. 26, 34, 37 S. E. 2d 868; 9 Mich. Jur., Indictments, Informations and Presentments, § 34, p. 683; 52 C. J. S., Larceny, § 103, p. 921, at p. 922.

The defendant also says that the evidence in question was irrelevant and immaterial because the fact that he was in the Michtom store during the evening of November 30 and the morning of December 1 constituted no proof of criminal activity with regard to the goods which already had been shipped before such visits.

But the evidence of the store employee, which tended to indicate that the defendant and his associates were in the store after the shipments were made, did not bind the Commonwealth to the theory that the goods could have been stolen only during those alleged visits. This employee testified more than sixteen months after the occurrences in question, and his testimony was based upon "the best of [his] knowledge", rather than upon written memoranda. Although he testified that the evening visit was on a Friday, he admitted he had not looked at a calendar to confirm the date.

Moreover, one of the other employees, although he stated that he observed the defendant in the store "with other persons . . . in the latter part of 1962", did not "know exactly . . . when it was that they were there." The third employee stated that he saw the defendant in the store "on more than one occasion." He said that "on one occasion . . . there was one person" with the defendant and he placed that

visit "on a Friday evening, the latter part of November . . . I am not exactly sure of the date . . . at the time . . . I felt like I had seen him alone before."

Thus, under the circumstances, it would have been proper for the trial court to infer that one or more of the visits to the store by the defendant and his associates took place before the shipments were made.

But, even if it be assumed that no one could place the defendant and his accomplices in the store before the shipments were made, that was not destructive of the Commonwealth's case. Nor was the Commonwealth obligated to explain why the men visited the store after the shipments took place, if that was the situation. Only the defendant and his friends could have made that explanation and they have chosen not to do so.

The defendant and his associates were, according to the evidence, in Charlottesville on at least three days in the latter part of November, 1962, around the time of the theft. What they did with relation to the Michtom store during that period, whether before or after the shipments were made, was relevant and material to proof of the charge against the defendant.

■ The next contention of the defendant is that the court erred in refusing to admit into evidence two telegrams offered by him.

The defendant called to the stand, as his only witness, Raymond C. Pace, the city sergeant of Charlottesville. The defendant sought to prove by this witness the contents of two telegrams received by him from Augusta, Georgia. Counsel for the defendant told the court that "these telegrams advise that the Sheriff's Department (in Augusta) has ascertained that Pat *Pesancello* checked in at the Holiday Inn at 4:08 a.m. December 1, 1962. That night it was investigated by the Sheriff's Department and it was ascertained that that was true and a verification is from Mr. J. D. Graves, Augusta Georgia Western Union."

The defendant argues that the telegrams should have been admitted because their contents directly refuted "the testimony of all the witnesses who identified Pasanello as being in Virginia on November 30, and December 1, 1962, [and] would have weakened their testimony."

The defendant concedes that the telegrams were hearsay evidence but he does not point to any exception to the hearsay rules that would permit their introduction. Nor does he offer us any sound

reason why the rules against such evidence should be here abrogated. It was not error to refuse the offered evidence.

█ The defendant's final contention is that the court erred in not granting his motion to set aside the judgment. What has already been said should be sufficient to dispose of this contention. But it would not be amiss to say that the defendant's real complaint in this case is that his conviction should not stand because "the question of time has been so poorly proven" and because no one could testify that the defendant and his associates "removed a single item from the store."

It is not surprising, and certainly not fatal to the Commonwealth's case, that no one was able to say at exactly what moment the larceny took place. And it is not an unusual situation that no witness was able to tell by what precise method the goods were removed from the store. Thieves do not usually leave timetables and blueprints of their activities behind them, to chart their prosecutions after they are apprehended.

All that the Commonwealth was required to do under its burden of proof was to establish, beyond a reasonable doubt, the essential elements of the offense of aiding in concealing stolen goods. This the Commonwealth sought to do by circumstantial evidence. When, as here, such evidence is of a convincing character and excludes every reasonable hypothesis other than that the accused is guilty, there is no ground upon which this court may, or will, disturb the judgment of the trial court. *Wright* v. *Commonwealth*, 196 Va. 132, 137, 82 S. E. 2d 603; *Dean* v. *Commonwealth*, 32 Gratt. (73 Va.) 912, 926.

We find no error in the conviction of the defendant. Accordingly, the judgment of the trial court will be

*Affirmed.*