PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Alston and Senior Judge Bumgardner
Argued at Alexandria, Virginia

FREDDY VELEZ-SUAREZ

v.        Record No. 1269-13-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROSSIE D. ALSTON, JR.
JANUARY 27, 2015

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

Bonnie H. Hoffman, Deputy Public Defender (Office of the Public
Defender, on briefs), for appellant.

Susan Mozley Harris, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Freddy Velez-Suarez (appellant) appeals his convictions of conspiracy to commit grand

larceny in violation of Code §§ 18.2-23 and -95 and destruction of property in violation of Code

§ 18.2-137.  On appeal, appellant argues that the trial court erred "in convicting [appellant] of

conspiracy to commit grand larceny as the evidence was insufficient to establish [appellant] and

Mr. Amaya had an agreement to engage in a pre-concerted criminal act" and "in convicting

[appellant] of destruction of property as the evidence was insufficient . . . under a principle in the

second degree or accomplice/co-conspirator theory to establish [appellant's] guilt for the cutting

of the sensor tags found in Mr. Amaya's dressing room stall."  We disagree and therefore affirm

appellant's convictions.

I.  Background

On January 20, 2012, appellant was arrested for shoplifting and conspiracy to commit

larceny along with his co-conspirator, Edgar Amaya-Cuellar, at Dulles Town Center Mall in

Sterling, Virginia, outside of a Lord & Taylor department store. On April 9, 2012, appellant

was indicted on charges of felony possession of burglarious tools with the intent to commit

larceny in violation of Code § 18.2-94; felony conspiracy to commit larceny in violation of Code

§§ 18.2-23[1] and -95; petit larceny, second offense, in violation of Code §§ 18.2-96 and -104;

destruction of property valued less than $1,000 in violation of Code § 18.2-137; and preventing a

law enforcement officer from lawfully arresting him in violation of Code § 18.2-479.1.

As this is a sufficiency of the evidence case, we review the facts before the trial court in

their entirety in order to determine whether those facts supported appellant's convictions. At

appellant's bench trial on July 27, 2012, Nicole Bramlett, a Lord & Taylor loss prevention

officer testified for the Commonwealth. Ms. Bramlett testified that she first noticed appellant

and Mr. Amaya-Cuellar because they were carrying shopping bags that did not belong to any of

the stores at that mall and she began to follow them on camera.[2] She saw both men select

merchandise, and then witnessed Mr. Amaya-Cuellar enter the fitting room first and appellant

enter a bit later. The men were not in the fitting room for longer than five minutes.

---

[1] Code § 18.2-23 provides, in relevant part:

> B. If any person shall conspire, confederate or combine with
> another or others in the Commonwealth to commit larceny or
> counsel, assist, aid or abet another in the performance of a larceny,
> where the aggregate value of the goods or merchandise involved is
> more than $ 200, he is guilty of a felony punishable by
> confinement in a state correctional facility for not less than one
> year nor more than 20 years. The willful concealment of goods or
> merchandise of any store or other mercantile establishment, while
> still on the premises thereof, shall be prima facie evidence of an
> intent to convert and defraud the owner thereof out of the value of
> the goods or merchandise. A violation of this subsection
> constitutes a separate and distinct felony.

[2] Ms. Bramlett identified VHS tapes of videos from the day that appellant and
Mr. Amaya-Cuellar allegedly shoplifted at Lord & Taylor, portions of which were played for the
trial court.

Mr. Amaya-Cuellar exited first, and appellant followed a bit later. After Mr. Amaya-Cuellar exited the fitting room and then the store, he sat outside the store on a bench, and loss prevention officers approached him. After a physical confrontation with Mr. Amaya-Cuellar, including officers having to physically detain him until law enforcement officers arrived, loss prevention officers recovered property belonging to Lord & Taylor from him that was worth over $200.

Meanwhile, when appellant exited the fitting room, he continued to look at more clothing in the store. After looking around for a few more minutes, and while the officers "wrestled around with [Mr. Amaya-Cuellar] outside the store," as appellant exited the store and tried to walk around Ms. Bramlett, she witnessed appellant carrying a shopping bag with a black coat inside she had previously seen appellant handle while in the store. Ms. Bramlett then approached appellant and told him that he had stolen merchandise and asked him to come back to the office with her. Appellant said he needed to use the bathroom and that Ms. Bramlett did not have the right to stop him. Ms. Bramlett testified that she told appellant that he could not go to the bathroom but appellant went inside the bathroom of Lord & Taylor anyway. Loss prevention officers later recovered the black coat outside of the store without a security sensor on it. Ms. Bramlett testified that she could not recall if the specific black coat had a security sensor on it prior to the theft, but that usually those coats would have a security sensor on them. The black jacket retails for $119.99.

The evidence also revealed that while Ms. Bramlett monitored Mr. Amaya-Cuellar and appellant on surveillance camera until they exited the store with merchandise, her coworker Justin Wade, another loss prevention officer at Lord & Taylor, followed the men around the store and into the fitting room. Mr. Wade also testified for the Commonwealth and stated that he observed (and the video showed) appellant entering the fitting room area with some items he selected, including a shiny black coat. Mr. Wade entered the fitting room area while

Mr. Amaya-Cuellar and appellant were in individual stalls with their merchandise. He heard Mr. Amaya-Cuellar and appellant talking in Spanish and could not understand what they were saying. After Mr. Amaya-Cuellar exited the fitting room with no merchandise, Mr. Wade entered the stall Mr. Amaya-Cuellar had occupied and identified three missing items he previously saw Mr. Amaya-Cuellar holding. Appellant remained in his fitting room stall while Mr. Wade examined the contents of Mr. Amaya-Cuellar's fitting room stall. Appellant later exited the fitting room area with a few items and returned some of them to displays in the store; however, Mr. Wade did not see him return the black coat in question.

Once Mr. Amaya-Cuellar exited the store and went to sit on a bench in the mall, Mr. Wade testified that he approached him and Mr. Amaya-Cuellar became confrontational and refused to go back into the store with him. At some point while Mr. Wade, Ms. Bramlett, and mall security were dealing with Mr. Amaya-Cuellar, appellant exited the store with shopping bags. Mr. Wade stated that, once he exited the store and saw what was going on between Mr. Amaya-Cuellar and law enforcement, appellant became verbally combative but not threatening towards loss prevention and mall security officers. At some point, Mr. Wade witnessed appellant go back inside Lord & Taylor and a few minutes later, exit again.

When Mr. Wade examined the fitting rooms Mr. Amaya-Cuellar and appellant occupied, he found security devices in Mr. Amaya-Cuellar's fitting room but not in appellant's. Mr. Wade testified that there are various ways to remove security devices, including ripping a hole in the merchandise. Some of the merchandise Mr. Amaya-Cuellar selected had holes in it. The black coat appellant removed from the store was recovered about ten minutes after the entire incident took place. There was no testimony that the jacket had a hole in it.

Finally, Detective Patrick Beaver of the Loudoun County Sheriff's Office testified for the Commonwealth. Detective Beaver was a deputy specializing in the mall theft unit at the time of

the appellant's shoplifting incident. Before appellant and Mr. Amaya-Cuellar entered Lord & Taylor, Detective Beaver noticed both of them walking through the mall because they had bags from stores not located in Dulles Town Center. Detective Beaver made visual contact with appellant and Mr. Amaya-Cuellar in the food court and observed appellant with a belt with what looked like AK-47 rounds on it. Sometime after seeing appellant and Mr. Amaya-Cuellar in the food court, Detective Beaver was called to Lord & Taylor for a report of disorderly conduct. When he arrived outside of Lord & Taylor in the mall, Mr. Amaya-Cuellar was in handcuffs with loss prevention and appellant was yelling at Dulles Town Center security guards. Detective Beaver testified that loss prevention team members told him that both appellant and Mr. Amaya-Cuellar were involved in a larceny from Lord & Taylor. Detective Beaver then ordered appellant to sit down on a bench and remove his hands from his pockets. Appellant sat down but refused to take his hands out of his pockets. Detective Beaver then put appellant in handcuffs and moved him inside Lord & Taylor to the loss prevention office. He then viewed the video of appellant and Mr. Amaya-Cuellar inside Lord & Taylor and described them as "engaged and acting together as they were sorting - - or picking up items throughout the store and with them going into the dressing room." As a result of viewing the video combined with what loss prevention reported, Detective Beaver placed appellant and Mr. Amaya-Cuellar under arrest and searched both men incident to arrest. He found a wire-cutting device in appellant's front pocket and a pocketknife, two wire-cutters, and stolen items on Mr. Amaya-Cuellar. Detective Beaver testified that he later recovered the black jacket appellant removed from the store, but did not specify where or from whom he recovered it.

At the conclusion of the Commonwealth's evidence, the trial court granted appellant's motion to strike the charge of resisting arrest, but denied the motion as to the remaining counts. Mr. Amaya-Cuellar then testified for appellant. According to Mr. Amaya-Cuellar, he met up

- 5 -

with appellant at a bus stop on the day in question and, by coincidence, both were heading to Dulles Town Center. Mr. Amaya-Cuellar took some items to try on into the fitting room and was followed by a loss prevention officer who was "very rude" and continued to follow him around. Mr. Amaya-Cuellar testified that he did not have any conversations with appellant about why he was shopping that day and that he did not see appellant steal anything or remove any security devices. For his part in the incident, Mr. Amaya-Cuellar pled guilty to three charges of grand larceny, possession of burglarious tools, and assault and battery.

After additional evidence and argument, the trial court found appellant guilty of the remaining charges of possession of burglarious tools, conspiracy to commit grand larceny, petit larceny (2nd offense), and destruction of property. In so finding, the trial court specifically noted that it did not find Mr. Amaya-Cuellar's testimony credible and that the court found it "equally incredible" that appellant and Mr. Amaya-Cuellar "just happened to meet at a bus stop and agreed to hang out; and by the way, at the same time they both just happened to have wire cutters in their possession that they brought into a . . . store and both left with property." On September 13, 2012, the trial court sentenced appellant to one year incarceration on each of the offenses and suspended all but four months. This appeal followed.

## II. Analysis

### A. Standard of Review

We examine a trial court's fact-finding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). An appellate court thus does not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution,

whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (citing Jackson, 443 U.S. at 319). Thus, "it is not for this court to say that the evidence does or does not establish [appellant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." Cobb v. Commonwealth, 152 Va. 941, 953, 146 S.E. 270, 274 (1929).

### B. Conspiracy

Appellant first challenges his conviction for conspiracy to commit grand larceny, arguing that there was no evidence of an agreement between him and Mr. Amaya-Cuellar. Specifically, appellant argues that there was no evidence of any concerted action between him and Mr. Amaya-Cuellar from which the trial court could have inferred they made an agreement to shoplift.

"'Conspiracy is defined as an agreement between two or more persons by some concerted action to commit an offense.'" Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). "'There can be no conspiracy without an agreement, and the Commonwealth must prove beyond a reasonable doubt that an agreement existed.'" Id. (quoting Floyd v. Commonwealth, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978)). "Nevertheless, a conspiracy may be proved by circumstantial evidence." Floyd, 219 Va. at 580, 249 S.E.2d at 174 (citing Glasser v. United States, 315 U.S. 60, 80 (1942); Harris v. United States, 283 F.2d 923, 926 (4th Cir. 1960); Harms v. United States, 272 F.2d 478, 482 (4th Cir. 1959)). "Indeed, from the very nature of the offense, it often may be established only by indirect and circumstantial evidence." Id. (citing Madsen v. United States, 165 F.2d 507, 511 (10th Cir. 1947)).

In his argument, appellant appears to muddle the elements of a conspiracy with those of an attempt. "'An attempt in criminal law is an unfinished crime and is composed of two elements, the intent to commit the crime and the doing of some direct act toward its consummation, but falling short of the accomplishment of the ultimate design.'" Rogers v. Commonwealth, 55 Va. App. 20, 24-25, 683 S.E.2d 311, 313 (2009) (quoting Johnson v. Commonwealth, 209 Va. 291, 293, 163 S.E.2d 570, 573 (1968)). A conspiracy, by contrast, only requires proof of an agreement to commit a crime, not an act in furtherance of that crime. Chambliss v. Commonwealth, 62 Va. App. 459, 466, 749 S.E.2d 212, 216 (2013) ("[T]he crime of conspiracy is complete when the parties agree to commit an offense; Virginia does not require proof of an overt act in furtherance of the conspiracy." (citing Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992))). While many times conspiracy can only be proven by circumstantial evidence of the conspirators' actions from which the fact-finder may infer the existence of an agreement, the evidence of those actions is necessary *only to the extent that it shows the fact of an agreement*, not because acts in furtherance of the agreement are required to prove a conspiracy. See Floyd, 219 Va. at 580, 249 S.E.2d at 174 ("Indeed, from the very nature of the offense, [conspiracy] often may be established only by indirect and circumstantial evidence." (citation omitted)); Stultz v. Commonwealth, 6 Va. App. 439, 443, 369 S.E.2d 215, 217 (1988) ("[A] formal agreement need not be shown; a conspiracy 'can be inferred from the overt conduct of the parties.'" (quoting Floyd, 219 Va. at 581, 249 S.E.2d at 174)). Thus, the alleged absence of any overt, concerted action between appellant and Mr. Amaya-Cuellar in furtherance of their agreement does not, by that circumstance itself, mean there was insufficient evidence of an agreement to convict appellant of conspiracy.

Appellant further argues that there was insufficient circumstantial evidence of an agreement between appellant and Mr. Amaya-Cuellar. We disagree. In fact, there was ample

circumstantial evidence of an agreement between the two before the trial court and the trial court, sitting as fact-finder, clearly and cogently related those facts in its analysis. Appellant and Mr. Amaya-Cuellar met at a bus stop and made their way to the mall together. They then walked through the mall with shopping bags from stores outside of the mall and entered Lord & Taylor together. Appellant and Mr. Amaya-Cuellar proceeded to walk through Lord & Taylor picking up items and then carrying them to the fitting rooms. Detective Beaver described the video of appellant and Mr. Amaya-Cuellar as "engaged and acting together as they were sorting - - or picking up items throughout the store and with them going into the dressing room." Mr. Wade heard appellant and Mr. Amaya-Cuellar talking while in the fitting rooms, though he could not understand what they were saying. After both Mr. Amaya-Cuellar and appellant exited the store, concealed clothing items that had not been paid for were recovered from Mr. Amaya-Cuellar and a black jacket that appellant had been seen walking around the store with was also recovered. Mr. Wade found security devices in the fitting room stall used by Mr. Amaya-Cuellar and while he did not find security sensors in appellant's fitting room, Detective Beaver recovered a wire-cutting device from appellant's person and as well as a pocketknife and two wire-cutters on Mr. Amaya-Cuellar's person. Ms. Bramlett could not recall if the black jacket had a security device on it but testified that usually that jacket would have a security device.

All of this evidence led the trial court to reasonably infer that appellant and Mr. Amaya-Cuellar agreed beforehand that they would steal items from Lord & Taylor. Indeed, in finding appellant guilty on the conspiracy count, the trial court noted that it found it "incredible" that appellant and his friend "just happened to meet at a bus stop and agreed to hang out; and by the way, at the same time they both just happened to have wire cutters in their possession that they brought into a . . . store and both left with property." Therefore, we find that

there was sufficient evidence of an agreement to convict appellant of conspiracy to commit larceny.

## C. Destruction of Property

Next, appellant challenges his conviction for destruction of property, arguing that the evidence was insufficient to convict him because there was no evidence that he cut the sensor tags found in Mr. Amaya-Cuellar's fitting room.

Code § 18.2-137 states, in pertinent part, that "any person [who] intentionally [destroys property, real or personal, not his own] . . . shall be guilty of (i) a Class 1 misdemeanor if the value of or damage to the property . . . is less than $1000."

> "[E]veryone connected with carrying out a common design to commit a criminal act is concluded and bound by the act of any member of the combination, perpetrated in the prosecution of the common design. But it is not necessary that the crime committed shall have been originally intended. Each is accountable for all the acts of the others done in carrying out the common purpose, whether such acts were originally contemplated or not, if they were the natural and proximate result of carrying out such purpose . . . ."

Boggs v. Commonwealth, 153 Va. 828, 836, 149 S.E. 445, 447 (1929) (citation omitted); see also Thomas v. Commonwealth, 279 Va. 131, 157, 688 S.E.2d 220, 234 (2010) ("'All those who assemble themselves together with an intent to commit a wrongful act, the execution whereof makes probable, in the nature of things, a crime not specifically designed, but incidental to that which was the object of the confederacy, are responsible for such incidental crime.'" (quoting Brown v. Commonwealth, 130 Va. 733, 738, 107 S.E. 809, 811 (1921))); Spradlin v. Commonwealth, 195 Va. 523, 528, 79 S.E.2d 443, 445 (1954) (holding that "all who participate in any way in bringing [the resulting crime] about are equally answerable and bound by the acts of every other person connected with the consummation of such resulting crime"). "In short, the Supreme Court treats concert of action as a species of accomplice liability, carrying with it the

principle that the punishment imposed on each accomplice may be the same." Davis v. Commonwealth, 36 Va. App. 291, 295-96, 549 S.E.2d 631, 633 (2001).

There was ample evidence before the trial court that Mr. Amaya-Cuellar, as part of his larcenous undertaking, removed security sensors from various pieces of clothing while in his fitting room stall, as evidenced by Mr. Wade finding the sensors in the stall and noting that various items Mr. Amaya-Cuellar selected had holes in them. Accordingly, we also find the evidence sufficient to support appellant's conviction for destruction of property based on Mr. Amaya-Cuellar's removal of security sensors from clothing he selected. See Boggs, 153 Va. at 836, 149 S.E. at 447 ("[E]veryone connected with carrying out a common design to commit a criminal act is concluded and bound by the act of any member of the combination, perpetrated in the prosecution of the common design.").

Further, we also find that the evidence was sufficient for the trial court to find that appellant detached a security sensor from the black jacket he removed from the store. Based on Ms. Bramlett's testimony that the jacket taken by appellant normally would have a security sensor on it and Detective Beaver finding wire cutters on appellant's person, the trial court could have inferred that appellant removed the security sensor from the black jacket himself. The fact that the security sensor was not found does not necessarily debunk this inference because appellant re-entered Lord & Taylor and went into the bathroom after being approached by Ms. Bramlett and asked to come back and discuss items stolen from the store.

Therefore, because there was evidence that Mr. Amaya-Cuellar destroyed property and sufficient evidence to show a conspiracy to commit larceny between appellant and Mr. Amaya-Cuellar, as well as sufficient evidence that a rational trier of fact could have found that appellant destroyed property himself, we hold that the trial court did not err in convicting appellant of destruction of property.

For these reasons, we hold that the evidence was sufficient to support appellant's convictions and the trial court did not err in convicting him.

Affirmed.
