## Richmond

Roger Reed v. Commonwealth of Virginia.

March 5, 1973.

Record No. 8066.

Present, All the Justices.

*Wade H. Ballard, III [W. Va.] (Max Jenkins; Ballard and Osborne; Goldsmith & Jenkins,* on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General (Andrew P. Miller, Attorney General;* on brief), for defendant in error.

Per Curiam.

Roger Reed, defendant, was found guilty by a jury on an indictment which charged that he did unlawfully and feloniously conspire with Charles Francis Bowles to distribute a controlled drug (LSD) in violation of Code § 54-524.104. His punishment was fixed at one year's confinement in the penitentiary and the payment of a fine of $1,000. For reasons appearing satisfactory to the court, the execution of the penitentiary sentence was suspended and defendant was placed on probation. The critical question presented is whether the evidence was sufficient to convict him of the offense.

Viewing the evidence in the light most favorable to the Commonwealth, the record discloses that defendant was involved in a drug transaction on December 21, 1970. On that day, R. C. Sharp, Jr., an undercover member of the Virginia State Police, and Ronald Powell, a police informant, went to Giles County and visited the defendant,

whom Sharp had previously met through Powell. There, Sharp asked defendant if "he knew where we could score [buy] some acid [LSD] in Blacksburg." Defendant replied, that "if he could find the person he usually scored from, he knew we could score."

At approximately 6:00 p.m., Sharp, the defendant, Powell and Bunny Christian, a friend of the defendant, departed from the defendant's home and proceeded to Blacksburg in Sharp's automobile to locate defendant's drug source. After arriving in Blacksburg, Sharp was directed by the defendant to a house on Roanoke Avenue, where "Charlie Tuna" (later determined to be Charles Francis Bowles) lived. The defendant knocked on the door, but no one answered. They then proceeded to an apartment house about one-half mile distant. The defendant found no one present at the apartment. According to Sharp, when the defendant returned to the car, he said "that he was looking for two girls who lived in the apartment, and that they could tell him where to find some acid if there was any in town."

At the defendant's direction, they drove next to the Spudnut Donut Shop in Blacksburg. Sharp and the defendant entered the shop, where the defendant saw Bowles sitting at a table and pointed him out to Sharp. Although no conversation took place between the defendant and Bowles, when the defendant and Sharp left the shop, Bowles followed them and approached the two men on the street. The defendant asked Bowles if he had any "acid." Bowles responded that he had no "acid," but that he had some mescaline. Sharp told Bowles he would like to make a purchase, and they then drove to the Bowles residence on Roanoke Avenue. While in the car, Bowles attempted to sell drugs to the defendant. The defendant said that he had no money in his possession but "would score from him on the next day," and that Sharp was "doing the buying." Sharp and Bowles entered the house alone. While there, Sharp paid Bowles $21 for seven LSD capsules. There was no showing that the defendant received any benefit from the transaction.

In order to convict defendant of conspiring with Bowles to distribute a controlled drug, the Commonwealth had to prove beyond a reasonable doubt that an agreement existed between the two men by some concerted action to distribute the drugs. *Smith* v. *Commonwealth*, 212 Va. 662, 187 S.E.2d 205 (1972). In the case at bar, the evidence was, as a matter of law, insufficient to prove an agreement to commit the offense.

Accordingly, the judgment will be reversed and the case remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*