## Salem

DREW B. FEIGLEY

v.

COMMONWEALTH OF VIRGINIA

No. 0121-92-3

Decided July 13, 1993

Counsel

Thomas C. Antenucci (Copeland, Molinary, Bieger & Leonard, P.C., on brief), for appellant.

Janet F. Rosser, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

Opinion

**COLEMAN, J.**—Drew B. Feigley appeals his convictions of distributing cocaine and conspiring to distribute cocaine. He contends (1) the trial judge erred by denying his motion for a continuance, and (2) the evidence was insufficient to support the conviction of conspiracy. We hold that the trial judge did not err by denying Feigley's motion for a continuance on the day of trial where no good cause was shown. However, we hold that the evidence, which proved that Feigley sold cocaine, was insufficient to prove that he conspired to distribute cocaine. Therefore, we affirm the defendant's conviction of distributing cocaine and reverse the conviction of conspiring to distribute cocaine.

On February 15, 1990, undercover officer Mike Edmonds purchased cocaine in a transaction involving Drew Feigley (defendant), David Evans, Eddie Parks, and Mark Hayden. Officer Donald Lambert visually observed the transaction and listened to it over an audio transmitter attached to Edmonds. Edmonds met David Evans at a Wal-Mart parking lot and asked him if he had cocaine to sell. Evans talked with Eddie Parks, who said that he believed Drew Feigley could sell them cocaine. Parks made phone calls, after which he reported that "Drew would deliver to the parking lot."

Fifteen minutes later, Feigley arrived at the Wal-Mart parking lot. Mark Hayden got in Feigley's car, and the two drove away. During that time, Feigley gave Hayden several "baggies" of cocaine. When they returned to the parking lot, Hayden went to Edmonds' vehicle and handed Edmonds the cocaine in exchange for $275. Hayden then returned to Feigley's vehicle and gave Feigley the $275.

Drew Feigley was indicted on one count of distributing cocaine and one count of conspiring to distribute cocaine. On April 2, 1990, the trial judge determined that Feigley was indigent and appointed him counsel. On July 20, 1990, the court-appointed attorney withdrew when he discovered that he had been appointed to represent a co-defendant in the case. The trial judge appointed Feigley a second attorney.

On October 22, 1990, the day set for trial, Feigley moved for a continuance so that he could obtain an attorney of his choice. Feigley stated that he and his attorney disagreed on trial tactics and that he felt that, because his attorney would not earn as large a fee as a privately retained attorney, he would not "do the best job." Feigley stated that he had obtained funds within the past week to hire a private attorney who had agreed to represent him. Feigley's appointed attorney moved to withdraw on the ground that he could not represent a client who had no confidence in his ability to defend him.

The trial judge denied the motion for a continuance and counsel's motion to withdraw, finding that Feigley had been appointed "two very capable and experienced trial attorneys" within the last six months and that, had he intended or been able to employ counsel of his choosing, he could have done so prior to the day of trial. Also, the judge found that Feigley had not articulated a bona fide reason why the court-appointed attorney could not adequately defend him.

The jury found Feigley guilty of distributing cocaine and of conspiring to distribute cocaine and recommended sentences of five years and a fine of $2500 on each charge. The judge sentenced Feigley in accordance with the jury's verdict.

## I. MOTION FOR CONTINUANCE

An accused's right to be represented by counsel includes " 'not only an indigent's right to have the government appoint an attorney to represent him, but also the right of any accused, if he can provide counsel for himself by his own resources . . . to be represented by an attorney of his own choosing.' " *Bolden v. Commonwealth*, 11 Va. App. 187, 190, 397 S.E.2d 534, 536 (1990), *cert. denied*, 502 U.S. 943 (1991) (quoting *Thacker v. Slayton*, 375 F. Supp. 1332, 1335-36 (E.D. Va. 1974)); *Paris v. Commonwealth*, 9 Va. App. 454, 460, 389 S.E.2d 718, 721-22 (1990) (quoting *Thacker v. Slayton*, 375 F. Supp. 1332, 1335-36 (E.D. Va. 1974)). This right is nevertheless "limited by

a 'countervailing state interest . . . in proceeding with prosecutions on an orderly and expeditious basis.' " *Bolden*, 11 Va. App. at 190, 397 S.E.2d at 536 (quoting *Paris*, 9 Va. App. at 460, 389 S.E.2d at 721-22 (citations omitted)).

A trial judge has broad discretion in determining whether a continuance to obtain counsel is necessary in order to preserve the accused's right to assistance of counsel. *Bolden*, 11 Va. App. at 191, 397 S.E.2d at 536; *Paris*, 9 Va. App. at 461, 389 S.E.2d at 722. A trial judge's decision to deny a continuance will not be reversed on appeal unless there was a clear abuse of discretion and prejudice to the defendant. *Lowery v. Commonwealth*, 9 Va. App. 304, 307, 387 S.E.2d 508, 509 (1990). The trial judge does not abuse his discretion and deny the accused his right to counsel unless he makes " 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.' " *Paris*, 9 Va. App. at 461, 389 S.E.2d at 722 (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).

Feigley requested a continuance on the day his case was scheduled for trial. The trial date was more than six months after Feigley's first attorney had been appointed and more than three months after the second attorney had been appointed. Nevertheless, Feigley waited until the day of trial to inform the judge that he intended or might be able to retain counsel. Previously, Feigley had consistently represented that he was indigent and without means to retain counsel.

Feigley failed to make a "justifiable request for a delay." *Id.* In order to justify a continuance "by the last minute change of counsel, exceptional circumstances must exist." *Shifflett v. Commonwealth*, 218 Va. 25, 30, 235 S.E.2d 316, 320 (1977). No exceptional circumstances existed. Feigley's only reason for requesting a continuance was that he had a "basic feeling" that his attorney would not represent him as ably as privately retained counsel.

Furthermore, Feigley has not shown that the denial of a continuance prejudiced his case. There is no indication that the court-appointed attorney conducted an inadequate investigation, was unprepared for trial, or failed to pursue a vigorous defense. Feigley's only complaint is that he and his attorney were not particularly compatible. The right to effective assistance of counsel "does not guarantee that the defendant will be represented by a particular attorney," *Hummel v. Commonwealth*, 219 Va. 252, 258, 247 S.E.2d 385, 388 (1978), *cert. denied*, 440 U.S. 935 (1979), or that he will have a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

The trial judge did not abuse his discretion by denying Feigley's untimely motion for a continuance in order to obtain counsel of his own choosing.

## II. CONSPIRACY

■ The evidence is insufficient to prove that Feigley conspired with Hayden to sell cocaine to a third party. When sufficiency of the evidence is challenged on appeal, the evidence must be viewed in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). The trial court's refusal to set aside a jury verdict will not be disturbed on appeal unless plainly wrong or without evidence to support it. *Gray v. Commonwealth*, 233 Va. 313, 344, 356 S.E.2d 157, 174, *cert. denied*, 484 U.S. 873 (1987).

■ "Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.' " *Wright v. Commonwealth*, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982) (quoting *Falden v. Commonwealth*, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). "There can be no conspiracy without an agreement, and the Commonwealth must prove beyond a reasonable doubt that an agreement existed." *Floyd v. Commonwealth*, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978) (citations omitted).

■ A conspiracy to distribute drugs can be shown by a series of drug transactions where one person sells drugs to a buyer who, in turn, resells them to a third party. *See Zuniga v. Commonwealth*, 7 Va. App. 523, 532, 375 S.E.2d 381, 387 (1988); *Davis v. United States*, 279 F.2d 576, 578-79 (4th Cir. 1960); *United States v. Walls*, 582 F. Supp. 1266, 1270 (N.D. W. Va. 1984). The fact finder may infer from the seller's knowledge that the drugs are being resold an agreement between the seller and buyer to supply drugs for distribution. As a general rule, however, a two-party drug sale, standing alone, does not constitute a conspiracy to distribute drugs because the transaction lacks the essential element of an agreement between the two parties to commit a subsequent distribution offense together. *Zuniga*, 7 Va. App. at 528-29, 375 S.E.2d at 385. The agreement that is incidental to a sale of drugs does not prove a conspiracy to sell or distribute drugs; the agreement must be that two or more persons will act in concert to commit a crime. If the evidence proves beyond a reasonable doubt that (1) a seller sold drugs, knowing that the buyer intended to redistribute

them and (2) the seller intended to " 'further, promote and cooperate in' " the buyer's plan to redistribute, "a conspiracy to distribute between a seller and a buyer . . . has been proved." *Id.* at 529, 375 S.E.2d at 385 (quoting *Direct Sales Co. v. United States,* 319 U.S. 703, 711 (1943)). Similarly, if two or more people agree in advance to act in concert to sell drugs, where one serves as the supplier and the other as the "runner," an agreement to distribute drugs exists and a conspiracy has been proven. It is proof of the second element, the agreement to distribute, that "establishes the necessary preconcert and connivance" necessary to prove a conspiracy. *Id.*

On the facts in this case, it is plausible that Feigley had agreed or prearranged with Hayden that the two would act in concert to sell drugs. It is also plausible that Feigley had sold the drugs to Hayden "on credit," knowing that Hayden had arranged an immediate resale in order to pay Feigley. *See Zuniga,* 7 Va. App. at 532, 375 S.E.2d at 387. In either situation, Feigley would have agreed with another to distribute drugs. There is no evidence to prove, however, that Hayden and Feigley had prearranged that they would distribute drugs or that Hayden would "run" drugs for Feigley. Likewise, no evidence proves that Feigley sold drugs to Hayden "on credit" whereby Feigley would have maintained a vested interest in the success of Hayden's resale and thereby acted to "further, promote and cooperate in" a resale. *Id.*

On this record, it is equally, if not more, plausible that no "sale" took place between Feigley and Hayden, but that Hayden, who had been approached by Edmonds, simply facilitated a single drug sale between Feigley and Edmonds. In other words, by contacting Feigley on behalf of Edmonds and acting as the agent for the exchange of drugs and money between Edmonds and Feigley, Hayden was simply aiding and abetting in the drug sale between Edmonds and Feigley. The evidence fails to show any agreement between Feigley and Hayden to sell drugs to others or that Hayden had agreed to sell drugs for Feigley. In view of this isolated transaction, the only agreement proven was that Hayden and Evans agreed with Edmonds to assist him to purchase cocaine. *See Reed v. Commonwealth,* 213 Va. 593, 594, 194 S.E.2d 746, 747 (1973). No money was exchanged between Feigley and Hayden until the sale to Edmonds was complete. On these facts, the evidence does not prove that Feigley sold drugs to Hayden, knowing that he would resell them. *Compare Zuniga,* 7 Va. App. at 525, 375 S.E.2d at 383; *Davis,* 279 F.2d at 578; *Walls,* 582 F. Supp. at 1269-70. The evidence proves only a single isolated drug sale by Feigley to Edmonds

with Hayden acting as the agent on behalf of Edmonds. The evidence proves only that Feigley distributed cocaine, for which he stands convicted, and not that he conspired with Hayden to sell cocaine to Edmonds. *See Zuniga,* 7 Va. App. at 527-28, 375 S.E.2d at 384 (conspiracy to commit a crime is distinguishable from aiding and abetting the commission of a crime, which does not require proof of an agreement between the co-actors to commit an offense).

■ The fact finder resolves all conflicts in the evidence. However, once the conflicts in the evidence have been resolved and the evidence is equally susceptible to two or more constructions, one of which would support conspiracy and another which would not, the fact finder is not free arbitrarily to select that theory of conspiracy. *See Corbett v. Commonwealth,* 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969). Furthermore, when a conviction is based on circumstantial evidence, the evidence "must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence." *Bishop v. Commonwealth,* 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984). Although the Commonwealth is not required to disprove every remote possibility of innocence, it must disprove those theories of innocence that "flow from the evidence itself." *Black v. Commonwealth,* 222 Va. 838, 841, 284 S.E.2d 608, 609 (1981). The theory that Hayden merely aided and abetted Edmonds in a single transaction between Feigley and Edmonds is not "remote." On this record, the evidence leaves in reasonable doubt whether Hayden aided and abetted Edmonds' purchase of drugs from Feigley or whether, instead, Feigley and Hayden agreed to distribute drugs or that Feigley sold drugs to Hayden, knowing that he intended to resell them to Edmonds. The Commonwealth failed to prove a conspiracy between Feigley and Hayden.

Finding insufficient evidence of an agreement between Feigley and Hayden to distribute cocaine, we reverse Feigley's conviction of conspiracy, but affirm the conviction for distributing cocaine.

*Affirmed in part,*
*reversed in part.*

Koontz, J.,* and Bray, J., concurred.

---

* When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.