COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Haley
Argued at Chesapeake, Virginia


ROOSEVELT WALKER, III

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 2254-05-1                  JUDGE ROBERT P. FRANK
                                                     OCTOBER 31, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles D. Griffith, Jr., Judge

Robert McL. Smith, III, for appellant.

Craig Stallard, Assistant Attorney General (Robert F. McDonnell,
Attorney General; Richard B. Smith, Senior Assistant Attorney
General, on brief), for appellee.


        Roosevelt Walker, III, appellant, was convicted in a jury trial of conspiracy to distribute

cocaine in violation of Code §§ 18.2-248 and 18.2-256.  On appeal, appellant contends the evidence

did not establish beyond a reasonable doubt that appellant entered into an agreement to distribute

drugs to a third party.  For the reasons stated, we affirm.

                                         FACTS

        Officer Gaignard of the Norfolk Police Department, acting undercover, drove his Dodge

Neon to Proscher Street in Norfolk.  Upon his arrival, an individual later identified as Marcey

Bell approached Gaignard and asked Gaignard what he was looking for.  Gaignard responded,

"hard," which is a street name for cocaine.  Bell instructed Gaignard to pull to the corner and he

(Bell) would return to Gaignard's car.  Gaignard parked, then watched in his rearview mirror as

Bell walked across the street to a nearby house located thirty to forty yards away.  Appellant was

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

seated on the front porch, which was four to five feet above street level. Gaignard saw Bell speak with appellant and observed that the men "appeared to make a transaction." Appellant "appeared to hand" something to Bell, although Gaignard could not see what was passed between them. At trial, Gaignard testified that his view of the porch was unobstructed and the weather was clear and dry.

Bell returned to Gaignard's vehicle, keeping his hand "clenched," and handed Gaignard two individually wrapped baggies of crack cocaine. Gaignard paid Bell twenty dollars. Gaignard testified at trial that Bell did not have anything in his hands when Bell initially approached him and that he did not see Bell reach into his pocket or reach to the ground to retrieve anything.

Investigator Christopher Scallon qualified at trial, without objection, as an expert in the field of drug distribution in the City of Norfolk. He testified that a common technique used by "street-level" dealers to distribute drugs is to "employ or use" drug users as "runners" to sell drugs to customers on the street. When a "runner" finds a purchaser, he will return to the main distributor, get the drugs from that individual, and then take the drugs to the customer. This procedure, according to Scallon, not only allows a distributor to reach more customers, but it provides the distributor with an opportunity to hide if a "runner" is approached by the police.

The jury found appellant guilty of conspiracy to distribute drugs. This appeal follows.

ANALYSIS

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). This means the jury's verdict cannot be overturned on appeal unless no "'rational trier of fact'" could have come to the conclusion it did.

Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting

Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  Under this standard, a reviewing court asks

whether "'any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt.'"  Id. (quoting Jackson, 443 U.S. at 319).  "'This familiar standard gives full

play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh

the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  Id. at

257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319).  Thus, we do not "substitute our

judgment for that of the trier of fact" even if our opinion were to differ.  Wactor v.

Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

"Conspiracy is defined as 'an agreement between two or more persons by some concerted

action to commit an offense.'"  Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d

520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713

(1982)).

The crime is "complete when the parties agree to commit an offense," and "[n]o overt act

in furtherance of the underlying crime is necessary."  Gray v. Commonwealth, 260 Va. 675, 680,

537 S.E.2d 862, 865 (2000).  Although no overt act is necessary to establish a conspiracy, the

parties' "'overt conduct'" may support a finding of the existence of a conspiracy.  Poole v.

Commonwealth, 7 Va. App. 510, 513, 375 S.E.2d 371, 372 (1988) (quoting United States v.

Harris, 433 F.2d 333, 335 (4th Cir. 1970)).

> "Where it is shown that [the parties] by their acts pursued the same
> object, one performing one part and the other performing another
> part so as to complete it or with a view to its attainment, the jury
> will be justified in concluding that they were engaged in a
> conspiracy to effect that object."

Amato v. Commonwealth, 3 Va. App. 544, 552, 352 S.E.2d 4, 9 (1987) (quoting 16 Am. Jur. 2d,

Conspiracy § 42 (1979)).

"In order to establish the existence of a conspiracy, as opposed to mere aiding and abetting, the Commonwealth must prove 'the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting.'" Zuniga v. Commonwealth, 7 Va. App. 523, 527, 375 S.E.2d 381, 384 (1988) (quoting United States v. Peterson, 524 F.2d 167, 174 (4th Cir. 1975)).

The appellant contends that there is no evidence that appellant and Bell had agreed to sell drugs or that Bell would act as a "runner" for appellant.[1] "[I]f two or more people agree in advance to act in concert to sell drugs, where one serves as the supplier and the other as the 'runner,' an agreement to distribute drugs exists and a conspiracy has been proven." Feigley, 16 Va. App. at 723, 432 S.E.2d at 524. While proof of the existence of an agreement is an essential element to establish the crime of conspiracy, see Fortune v. Commonwealth, 12 Va. App. 643, 647, 406 S.E.2d 47, 48 (1991), proof of an explicit agreement is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy. Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992).

Here, the evidence, viewed in the light most favorable to the Commonwealth, see Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), sufficiently established that Bell and appellant conspired to distribute cocaine to Gaignard, an undercover police officer. Bell contacted Gaignard, and then approached appellant to make a transaction. Appellant was seated on a raised porch four to five feet above street level, which afforded him an opportunity to observe Bell and any possible police activity in the area. When Bell returned to Gaignard's car, he distributed the drugs to Gaignard that he had just obtained from appellant. Detective Scallon, who qualified as an expert in drug distribution, testified that dealers often

---

[1] During oral argument, appellant challenged the sufficiency of the evidence on the basis that he did not give any drugs to Marcey Bell. The question presented did not raise this issue, and we will not address it. Rule 5A:20.

"employ" "runners" to distribute drugs in the Norfolk area. "Employ" is defined as "to use or engage the services of . . . ." Webster's Third New International Dictionary 743 (1993). To "use" is to "put into action or service . . . [or] to employ." Id. at 2523.

"[T]he fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*). The trier of fact ascertains a witness' credibility, determines the weight to be given to his testimony, and has the discretion to accept or reject any of the testimony. See id. In determining the weight to be given to expert testimony, the fact finder may consider the basis for the opinion. Gilbert v. Summers, 240 Va. 155, 160, 393 S.E.2d 213, 215 (1990).

Clearly, the jury accepted Scallon as an expert, and considered his opinion as to the method of drug dealing employed by distributors in Norfolk. The jury could reasonably infer from Scallon's testimony and use of the term "employ" that there was an agreement between Bell and appellant that Bell would provide certain services for appellant. When one "engage[s] the services" of another, the fact finder could reasonably infer that there must be an agreement between the parties as to the services that each party will perform. The jury could further infer that there was a meeting of the minds for appellant to supply the drugs to Bell, and for Bell to actually sell the drugs on the street.

We find Scallon's expert opinion provided circumstantial evidence that appellant conspired with Bell to distribute drugs to third parties. Accordingly, we find that it was reasonable for the jury to conclude, under the facts of this case, that appellant and Bell had entered into an agreement to distribute drugs to individual customers on the street.

The judgment of the trial court is affirmed.

Affirmed.