UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and AtLee
Argued at Richmond, Virginia


KRISTOPHER LAVALLIERE

                                             MEMORANDUM OPINION[*] BY
v.       Record No. 1709-17-2         JUDGE RICHARD Y. ATLEE, JR.
                                             APRIL 9, 2019

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
James S. Yoffy, Judge

Tucker L. Henley (Blackburn, Conte, Schilling & Click, P.C.,
on brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, a judge of the Circuit Court of Henrico County ("trial court")

convicted appellant Kristopher Lavalliere of conspiracy to distribute heroin. Lavalliere received

a sentence of twenty years in prison, with fourteen years suspended. On appeal, he argues the

trial court erred in finding sufficient evidence of an agreement for subsequent distribution of

drugs, a necessary element of conspiracy. For the following reasons, we affirm.

I. BACKGROUND

Between late August and early October of 2017, Lavalliere repeatedly purchased heroin

from Richard Pontani. Pontani would obtain the heroin in New Jersey and bring it back to

Henrico County to sell. Lavalliere would come to Pontani's house to purchase the heroin. At

first, Lavalliere bought 3.5 grams for $300. His purchases ultimately increased to seven, then

fourteen, grams at the same price rate (*i.e.*, $1,200 for fourteen grams). Lavalliere made these

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

purchases every day or every other day, meaning that fifteen to over thirty transactions took place. Lavalliere then resold the product on his own. Occasionally Lavalliere's girlfriend tested the product, although Pontani never saw Lavalliere do so. Pontani testified that he knew Lavalliere resold the product to other customers.

Pontani testified that Lavalliere was "definitely in the top three of my customers. As a matter of fact at that particular time, I would say he was probably my best customer." Lavalliere "was one of the very few people that actually paid up front for everything he ever got," so he never purchased from Pontani on credit. Pontani also never reduced the rate he charged regardless of the quantity of heroin Lavalliere purchased. He testified that he "kind of felt bad charging him three hundred dollars all the way up," but that Lavalliere said "he didn't have a problem with it because of his customers being willing to pay him, you know, ridiculous numbers in order for them to not have to travel into bad neighborhoods and, you know, they didn't mind spending the extra money for convenience." Pontani also testified that one time he alerted Lavalliere when a batch of heroin was of questionable quality, but that Lavalliere still purchased it as he had customers waiting.

## II. ANALYSIS

Lavalliere argues that the evidence was insufficient to show he engaged in a conspiracy to distribute heroin with Pontani. "What the elements of the offense are is a question of law that we review de novo. Whether the evidence adduced is sufficient to prove each of those elements is a factual finding, which will not be set aside on appeal unless it is plainly wrong." Lawlor v. Commonwealth, 285 Va. 187, 223-24 (2013). "In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom." Id. at 224. Direct evidence of an agreement

is not necessary; circumstantial evidence may provide the proof of the conspiracy. <u>Velez-Suarez v. Commonwealth</u>, 64 Va. App. 269, 277 (2015).

"As a general rule a single buyer-seller relationship, standing alone, does not constitute a conspiracy. Likewise, evidence of a distribution offense absent an agreement will not suffice to support a conspiracy conviction." <u>Zuniga v. Commonwealth</u>, 7 Va. App. 523, 528 (1988) (citations omitted). To prove a conspiracy between a buyer and seller, the Commonwealth must show "that (1) a seller sold drugs, knowing that the buyer intended to redistribute them and (2) the seller intended to 'further, promote and cooperate in' the buyer's plan to redistribute." <u>Feigley v. Commonwealth</u>, 16 Va. App. 717, 722-23 (1993) (quoting <u>Zuniga</u>, 7 Va. App. at 529).

Here, there is no dispute that Pontani knew of Lavalliere's intention to resell the heroin, and thus the first prong is not at issue. Rather, the sole question is whether the evidence established that Pontani intended to "'further, promote and cooperate in' [Lavalliere's] plan to redistribute." <u>Id.</u> at 723.

This Court has held that "[a] conspiracy to distribute drugs can be shown by a series of drug transactions where one person sells drugs to a buyer who, in turn, resells them to a third party." <u>Id.</u> at 722. That is the scenario we see here. Much of our relevant case law focuses on the importance of other evidence, such as a seller providing illegal product on credit with the expectation that the buyer will repay the debt once he has resold it to third parties, and how that may speak to the existence of a conspiracy. <u>See, e.g.</u>, <u>id.</u>; <u>Zuniga</u>, 7 Va. App. at 530-31. Yet those cases in which the outcome turned on such evidence, or the lack of it, involved only a single transaction.[1] Here, by contrast, we see a series of purchases, anywhere from fifteen to

---

[1] This Court reversed the conspiracy conviction in <u>Feigley</u> finding that the evidence did not show that Feigley sold cocaine as part of any agreement that the buyer would redistribute it. The Court specifically noted that there was no evidence the cocaine was sold on credit. <u>Feigley</u>, 16 Va. App. at 723. It also found insufficient evidence of knowledge, noting that "[o]n these

over thirty. This, among other evidence, speaks to Pontani furthering, promoting or cooperating in the venture, and thus, there being sufficient evidence of an agreement to distribute heroin.

That is not to say that a series of transactions, standing alone, is *necessarily* adequate to establish the second prong, but, as we have stated, it is evidence of it. Feigley, 16 Va. App. at 722.[2] With that in mind, here, the evidence shows that Lavalliere repeatedly purchased large quantities of heroin from Pontani. He also purchased it, even when he bought larger amounts, at the same rate, and did not negotiate or receive a discount. Pontani testified that Lavalliere was one of his best customers. Given Lavalliere's reliability in both demand and prompt payment for product, and how profitable his business was, Pontani had an interest in keeping him and his third-party customers happy in order to secure his continued business. His "feeling bad" about charging the same rate "all the way up," as well as his alerting Lavalliere when a batch of heroin was possibly subpar, is further evidence that he valued their ongoing relationship that relied on Lavalliere's redistribution. Given that Pontani had such an interest and that he continued to supply Lavalliere, who was only able to be such a valuable customer because he was reselling

facts, the evidence does not prove that Feigley sold drugs to [the buyer], knowing that he would resell them." Id. In Zuniga, this Court affirmed the conspiracy conviction, noting that there was evidence of an agreement because Zuniga purchased eight ounces of cocaine on credit from the seller. Zuniga, 7 Va. App. at 530-31. This Court has reversed a conviction where there was a series of transactions and an ongoing relationship between the buyer and seller, but in that case, there was insufficient evidence of any knowledge to redistribute. See Hudak v. Commonwealth, 19 Va. App. 260, 263 (1994) (noting that there was no testimony about buyer's LSD consumption or what would be inconsistent with personal use, or other evidence that the seller knew the buyer intended to redistribute).

[2] This is a fact-dependent analysis, and as such we limit our conclusion to these particular facts. We expressly do not endorse courts extrapolating from this decision and inferring the existence of any bright-line rule in conspiracy cases involving the repeat sale of contraband. The existence of a chain of commerce does not, in and of itself, constitute a conspiracy solely because the goods sold, and re-sold, are illegal. We are cautious of the risk of eliding the two distinct requirements of knowledge and furtherance, and do not wish for this opinion to serve to obscure or erase the fact that these are separate prongs in cases where there exists a series of transactions.

the contraband, the evidence here is sufficient to show that Pontani furthered, promoted or cooperated in Lavalliere's redistribution.

### III. CONCLUSION

The trial court did not err in finding that evidence, including a series of transactions over the course of over a month, was enough to show that Pontani furthered, promoted or cooperated in Lavalliere's illegal venture. As such, it did not err in finding evidence of an agreement and that the Commonwealth thus proved the elements of conspiracy. Accordingly, we affirm the trial court.

<u>Affirmed.</u>