COURT OF APPEALS OF VIRGINIA

**UNPUBLISHED**

Present: Judges O'Brien, Fulton and White

MARQUISE E. WHITAKER

                                    MEMORANDUM OPINION[*]

v.      Record No. 2162-23-2                       PER CURIAM
                                            AUGUST 5, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard B. Campbell, Judge

(Charles R. Samuels, on brief), for appellant.

(Jason S. Miyares, Attorney General; Lauren C. Campbell, Assistant
Attorney General, on brief), for appellee.

Following a jury trial, the circuit court convicted Marquise Elijah Whitaker (appellant) of

first-degree murder and use of a firearm while committing the murder. Appellant assigns error to

the court's refusal to appoint new counsel on the morning of the trial and its denial of his renewed

motion to strike at the conclusion of the evidence. After examining the briefs and record, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit,"

and "the dispositive issue or issues have been authoritatively decided, and the appellant has not

argued that the case law should be overturned, extended, modified, or reversed." Code

§ 17.1-403(ii)(a)-(b); Rule 5A:27(a)-(b). We affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On February 26, 2022, appellant shot and killed Vidal Smith inside a Shoe City store in Richmond. Store surveillance camera video showed that appellant was standing behind a mannequin when Smith entered the store. As Smith walked towards the back of the store, appellant raised his arm towards Smith, shot him repeatedly, and immediately fled. A forensic autopsy established that Smith suffered eight gunshot wounds, five of which were "lethal."

On April 4, 2022, appellant was indicted for first-degree murder, using a firearm while committing the murder, and maliciously discharging a firearm in or at an occupied building.[2] Appellant requested court-appointed counsel, and after confirming that appellant was indigent, the court appointed Wayne R. Morgan, Jr. as counsel.

At a status hearing on June 8, 2022, Morgan informed the court that appellant wanted to set the case for a jury trial. Morgan also told the court that the Commonwealth had "been very diligent about providing discovery," most of which was "electronic" in form, and Morgan needed to go to the jail "to go through it all together" with appellant. The court advised counsel that the case would be set for trial at the July docket call. Subsequently, by agreed order, the court set the case for a two-day jury trial beginning February 22, 2023.

On February 17, 2023, Morgan moved to continue the trial and advised the court that, during a recent jail visit, appellant had told him that "he was going to hire a lawyer." Morgan also stated that, on the previous day, appellant's sister had told Morgan that they were expecting a tax

---

[1] Our appellate standard of review requires that we state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In so doing, "we regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.*

[2] Before the trial began, the court granted the Commonwealth's motion to nolle prosequi the charge of maliciously discharging a firearm in or at an occupied building.

return on March 8 and were planning to hire Leonard McCall as counsel. Morgan informed the court that he had spoken with McCall, who confirmed that appellant's family had contacted him but had not yet retained him, and therefore McCall was not ready to make an appearance on appellant's behalf.

Morgan advised that he was "ready to go to trial," but he expressed a concern—shared by the prosecutor—that an out-of-state witness for the Commonwealth might travel to Virginia for trial and then learn that appellant had retained McCall who, at that point, would be asking for a continuance. Further, Morgan revealed that his daughter was ill and he also was "not feeling all that great right now." Finally, in response to the court's further questioning about his recent contacts with appellant, Morgan advised that due to recent surgery, he had not been able to write or use a computer and he had been out of his office for three weeks.

During this hearing, McCall—who was in the courthouse on another matter—came before the court and confirmed that he had been in contact with appellant's family members and they had mentioned the date of March 8. He had told appellant's family that he "would love to take on the case" if he was available on that date and if it was available to the court. Based on the circumstances described by both Morgan and McCall, the court continued the trial. It also set a hearing for March 17, 2023 to determine the status of appellant's legal representation.

At the March 17 status hearing, Morgan appeared with appellant. McCall was not present, nor had he sent the court a letter of representation, which the court had made "very clear" it "would expect . . . if, in fact, [McCall] was going to represent [appellant]." Accordingly, Morgan remained counsel of record, and the court reset the case for a two-day jury trial beginning September 26, 2023. It also set a pretrial conference for September 19 and ordered that appellant be present. The court advised appellant, "[I]f you yet again elect to retain counsel, that is certainly your prerogative, but I'm not going to move this trial date again."

- 3 -

At the pretrial conference on September 19, the court addressed appellant's handwritten motions alleging violations of his right to a speedy trial and requesting substitution of counsel.[3] After hearing appellant's testimony, the court denied the motions and ordered that the trial would proceed as scheduled on September 26, 2023.

On September 26, appellant again moved for a continuance. Speaking *pro se*, appellant told the court that he was not ready for trial and needed more time to prepare his defense. He also informed the court that he wanted a new lawyer and wanted to hire one. Appellant said that his communications with Morgan were "broken," resulting in an "inadequate defense" because he had been unable to assist his lawyer. Appellant claimed that he and Morgan had not discussed potential witnesses to be called on his behalf at the trial or any other issues that could contribute to a successful defense. He further asserted that Morgan was incapable of effectively representing him at the trial and he had a Sixth Amendment right to competent counsel. He concluded with this request: "Please, can you appoint me to a new counsel?"

When the court asked for a response, Morgan stated that he had carefully documented his work on the case and had sent letters to appellant in July, August, and September. In the letters, Morgan "spelled out" the defenses, alibi witnesses, and other evidence that appellant needed to disclose to him so that Morgan could present evidence at the trial. Yet, to date, appellant had not given Morgan the names of any witnesses or other information.

The court reminded appellant that, in February, it had told him that if he wanted to hire a new attorney, he needed to do so before the trial date. The court also noted that it had denied the same motion at the September 19 hearing and heard nothing different on this occasion, except that appellant felt he could not talk to Morgan, a circumstance that did not constitute ineffective

---

[3] The record on appeal does not contain a transcript of the September 19, 2023 hearing. It does contain the trial court's September 27 order memorializing that hearing, in which the court documented appellant's two *pro se* motions and its denial of the motions.

representation.  The court denied appellant's renewed motion for a new attorney and his motion for a continuance.

Appellant continued to argue that his relationship with Morgan "[had] been broken tremendously."  He claimed that Morgan had not shown him all of the evidence in the case, particularly all of the video evidence.  In response, the court asked, "Mr. Morgan, do you feel you have been able to present to your client the salient evidence about what you are aware from discovery, so that you could properly advise him, and do as best as you can in preparing the defense?"  Morgan replied, "Yes," and then he explained that, despite some initial problems with using his cell phone to access and play the videos, he had shown appellant every video that he had.  Morgan said, "I don't know where he is getting the idea that he hasn't seen a video."

Appellant pleaded not guilty and again confirmed his desire to have a jury trial.  During the colloquy that followed, appellant reiterated that he had not had enough time to speak with his lawyer about any possible defenses.  He also stated that he had not given his attorney the name of any witnesses to be called to testify on his behalf.  Yet, when asked if he was ready for trial, he answered, "Yes."

Trial proceeded.  At the end of the Commonwealth's case in chief, appellant moved to strike the first-degree murder charge, arguing that the evidence was insufficient to prove the necessary element of premeditation.  Accordingly, he asked the court to reduce the charge to second-degree murder.  The court denied the motion.

At the conclusion of the evidence, appellant renewed his motion to strike and again argued that the evidence was insufficient for a finding of premeditation.  Although appellant mentioned that the lack of premeditation "brings into factor [sic] the self-defense theory," this reference was in the context of his motion to strike the first-degree murder charge because "there [was] no premeditation."  Further, he asked the court to "dismiss the case" because he was not

charged with committing a lesser offense. The court stated that "[t]he issue of premeditation clearly belong[ed] to the jury," and it denied the renewed motion to strike. The jury found appellant guilty of first-degree murder and the related firearm charge.

ANALYSIS

I. Appointment of New Counsel

Appellant first contends that the trial court abused its discretion "in its decision to refuse appointment of new counsel." He argues that this refusal was "arbitrary and capricious." We find that the court did not abuse its discretion.

"Whether an indigent defendant's appointed counsel should be discharged lies within the sound discretion of the trial court." *Kinard v. Commonwealth*, 16 Va. App. 524, 526 (1993). The Sixth Amendment right to the assistance of counsel "entitles indigent criminal defendants to court[-]appointed counsel in felony cases and other criminal cases resulting in a sentence of imprisonment." *Brown v. Commonwealth*, 288 Va. 439, 442 (2014); *see* U.S. Const. amend. VI. "This constitutional right to counsel, however, does not guarantee that an indigent defendant will receive representation by counsel of his own choosing." *Brown*, 288 Va. at 442. Although a defendant who can afford to hire counsel has a constitutional right to choose his attorney, "the right to choice of counsel 'does not extend to defendants who require [court-appointed] counsel.'" *Id.* (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006)).

"[A]n indigent defendant may not discharge his court[-]appointed counsel at will. Only the court can do so." *Kinard*, 16 Va. App. at 526. Moreover, "[a]n indigent defendant cannot have his original attorney replaced unless he shows good cause." *Id.* In *Kinard*, this Court did not define "good cause," but it suggested that the record must "disclose [a] sound basis for dissatisfaction with [counsel's] services." *Id.* at 527. Moreover, it is well-established that "[t]he trial judge does not abuse his discretion and deny the accused his right to counsel unless [the judge] makes 'an

- 6 -

unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *Feigley v. Commonwealth*, 16 Va. App. 717, 721 (1993) (quoting *Paris v. Commonwealth*, 9 Va. App. 454, 461 (1990)).

Here, nothing in the record indicates that the court was "arbitrary and capricious" in denying appellant's second request for new counsel made on the morning of trial. Although appellant stated that the communications between him and Morgan were "broken," that he had been unable to assist counsel in preparing an "adequate" defense, and that he had not seen all of the video evidence in the case, Morgan contradicted these representations. Morgan told the court that he had sent letters to appellant in July, August, and September 2023 and, in those letters, had asked appellant to identify any defenses, alibi witnesses, and other evidence that appellant wanted him to present at the trial, but appellant had provided no such information. Further, Morgan stated that, despite some initial technical problems, he had shown appellant every video obtained during discovery.

Given Morgan's representations, a rational jurist was entitled to conclude, as the court did, that appellant sought the discharge of Morgan and the appointment of new counsel because he "just [didn't] feel like [he could] talk to him, and [he] would rather have somebody else." As the court correctly noted, this sentiment was not proof of ineffective assistance of counsel justifying the discharge of Morgan and the appointment of new counsel. Indeed, an indigent defendant's dissatisfaction with appointed counsel by itself is insufficient to support a change of counsel, especially when "the difficulty resulted from [the defendant's] refusal to cooperate with counsel, not from the court's failure to provide adequate counsel." *Kinard*, 16 Va. App. at 527.

Relying on *McNair v. Commonwealth*, 37 Va. App. 687 (2002) (en banc), appellant argues that the court's reasons for refusing to continue the trial for the "appointment of new counsel" were "not sufficient." He contends that the court's denial of his request for new counsel was "merely an acknowledgment of [his] second request for new counsel and a desire to move the matter forward."

He thus contends that the court's decision did not reflect a "serious consideration of the . . . criteria" that *McNair* established for denying new counsel. Appellant's reliance on *McNair*, however, is misplaced.

In *McNair*, the court refused to appoint counsel for a defendant and required him to proceed *pro se* after his fifth court-appointed attorney moved to withdraw on the day of trial. 37 Va. App. at 692. That attorney withdrew because she disagreed with the defendant's statements to the court that he lacked the information necessary to present his defense "so that [he] could get a fair trial" and "he had not had sufficient time to discuss his defenses with his attorney." *Id.* (alteration in original). On appeal, this Court reversed the trial court's finding that the defendant, by his conduct, had forfeited his right to a sixth court-appointed attorney, holding that the record was insufficient to support this finding. *Id.* at 699. We noted that "the trial court did not set forth the reasons for its determination that [the defendant] waived his right to counsel," *id.* at 697, and the record did not contain a "factual finding that the defendant's difficulty with his various attorneys amounted to a pattern of conduct calculated to prevent his trial from ever occurring," *id.* at 698. Although we stated that "a failure to explicitly address the basis for its conclusion . . . would not *per se* constitute reversible error," *id.* at 697, we noted that "the better practice would be" for a trial court "to produce a record which reflects that (1) the defendant placed his counsel in a position that precluded effective representation and thereby constructively discharged his counsel or (2) through his obstructionist behavior, dilatory conduct, or bad faith, the defendant *de facto* waived counsel." *Id.* at 697-98.

Here, however, the court did not deprive appellant of the assistance of counsel by discharging court-appointed counsel and refusing to appoint another. Rather, it refused to discharge current defense counsel and appoint another attorney to replace him. Therefore, on appeal, the issue in this case is not whether appellant forfeited his right to the assistance of new counsel by causing

- 8 -

his court-appointed attorney to withdraw. Rather, the issue is whether he gave the court "good cause" for discharging his court-appointed attorney and appointing new counsel to uphold his right to the effective assistance of counsel. Thus, our decision in *Kinard*, and not *McNair*, is the controlling authority in this case.

Consistent with *Kinard*, we find that the court did not abuse its discretion in denying appellant's request for a new court-appointed attorney. Because appellant did not provide "good cause" for discharging Morgan, we do not find that the court's refusal to appoint new counsel reflected an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Feigley*, 16 Va. App. at 721 (quoting *Paris*, 9 Va. App. at 461).

## II. Self-Defense

Appellant argues that the court erred in denying his renewed motion to strike "regarding self-defense." In support, he relies solely on his trial testimony and asserts that the court "misinterpreted the law of self-defense." Rule 5A:18 precludes our review of this issue.

Rule 5A:18 mandates that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Hence, "[i]n order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" *McDuffie v. Commonwealth*, 49 Va. App. 170, 177 (2006) (quoting *Marlowe v. Commonwealth*, 2 Va. App. 619, 621 (1986)). "A party must state the grounds for an objection 'so that the trial judge may understand the precise question or questions he is called upon to decide.'" *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (quoting *Jackson v. Chesapeake & Ohio Ry. Co.*, 179 Va. 642, 651 (1942)) (addressing the Supreme Court's equivalent Rule 5:25). Like Rule 5:25, Rule 5A:18 exists "to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid

unnecessary reversals and mistrials." *Williams v. Gloucester Sheriff's Dep't*, 266 Va. 409, 411 (2003) (quoting *Reid v. Boyle*, 259 Va. 356, 372 (2000)) (concluding that this Court did not err in applying Rule 5A:18 to hold that an appellant failed to preserve issues for appeal).

Rule 5A:18 applies to appellant's assignment of error concerning self-defense. Appellant argues the court erred in denying his renewed motion to strike because the evidence established that, as a matter of law, he acted in self-defense. Yet, he did not move to strike the evidence based on a "self-defense theory." The trial transcript reveals that appellant did not rely on self-defense to support his motion to strike; he did not ask the court to find that, as a matter of law, the evidence proved he killed Smith in self-defense. Rather, he asked the court to find that the evidence was insufficient to prove that his killing of Smith was premeditated and, therefore, as a matter of law, he was not guilty of first-degree murder. Although appellant mentioned that the lack of premeditation "[brought] into factor the self-defense theory," he only asked the court to strike the first-degree murder charge because "there [was] no premeditation." He also asked the court to "dismiss the case" because he was not charged with committing a lesser offense. Given these requests, any rational trial judge would have understood appellant's mention of "self-defense theory" as a passing comment in an argument against finding premeditation and not as a separate basis for granting the motion to strike. The court understood appellant's renewed motion to strike the first-degree murder charge to focus solely on premeditation, and, accordingly, it limited its denial of the motion to that issue. Following counsels' arguments, the court said, "The issue of premeditation clearly belongs to the jury."

Thus, by arguing the court erred in not granting his motion to strike "regarding self-defense," appellant presents to this Court an argument that he did not raise below. For this reason, we cannot address it. As we have consistently stated, "[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court." *Aponte v.*

*Commonwealth*, 68 Va. App. 146, 163 n.8 (2017) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)).  We are a "court of review, not of first view."  *Burkholder v. Palisades Park Owners Ass'n*, 76 Va. App. 577, 591 (2023) (quoting *Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 23 (2022)).  Additionally, appellant has not argued that any exceptions to Rule 5A:18 apply, and we do not invoke them sua sponte.  *See Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

## CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*